[No. D020939. Fourth Dist., Div. One. July 8, 1997.]

COUNTY OF SAN BERNARDINO, Plaintiff and Appellant, v.
PACIFIC INDEMNITY COMPANY, Defendant and Appellant.

668

COUNSEL

Latham & Watkins, Joel H. Mack, Barry J. Shotts and Jena L. Kirsch for Plaintiff and Appellant.

Cotkin & Collins, Roger W. Simpson, Irell & Manella, Gregory R. Smith, Thomas W. Johnson, Richard de Bodo, Marc S. Maister, Hill, Wynne, Troop & Meisinger, Kirk A. Pasich, Lori Yankelevits, Thomas & Elliott, Stephen L. Thomas, Jay J. Elliott, Brobeck, Phleger & Harrison, David M. Halbreich, Paul, Hastings, Janofsky & Walker, Ronald M. Oster, Eve M. Coddon, The Ford Law Firm, William H. Ford, Heller, Ehrman, White & McAuliffe, David B. Goodwin, Munger, Tolles & Olson and Charles D. Siegal as Amici Curiae on behalf of Plaintiff and Appellant.

Haasis, Pope & Correll, Susan J. Gill, Lewis, D'Amato, Brisbois & Bisgaard, Kenneth E. Goates and Alan E. Greenberg for Defendant and Appellant.

Luce, Forward, Hamilton & Scripps, John L. Riedl, Armin R. Callo, Wiley, Rein & Fielding, Laura A. Foggan, Daniel E. Troy, Stephen D. Goldman and Mary E. Borja as Amici Curiae on behalf of Defendant and Appellant.

OPINION

**KREMER, P. J.**—Defendant Pacific Indemnity Company (Pacific) appeals the portion of a court judgment entered upon the parties' stipulation that

Pacific was contractually obligated to defend plaintiff County of San Bernardino (County) in two underlying lawsuits brought against the County. We affirm that portion of the judgment.

The County appeals the portions of the judgment entered upon the parties' stipulation that Pacific was responsible only for 50 percent of the defense costs in those lawsuits and that the hourly attorney fee rate Pacific was required to pay in defending one of those suits was statutorily limited under Civil Code[1] section 2860, subdivision (c).[2] We reverse those portions of the judgment and direct the superior court to enter a new judgment favoring the County on such issues.

I

INTRODUCTION

Pacific provided the County with primary comprehensive general liability (CGL) insurance for more than 25 years. When Pacific's policies terminated, the County did not obtain replacement coverage.

Beginning while Pacific's policies were in effect and continuing after their expiration, the County operated a landfill. More than a decade after Pacific's policies expired, owners of adjacent land filed lawsuits against the County for property damage caused by toxic gases emitted from the landfill. The County tendered defense of those actions to Pacific. Pacific provided a defense under reservation of rights and demanded that the County as "self-insured" pay a portion of its defense costs.

---

[1]All statutory references are to the Civil Code unless otherwise specified.

[2]Section 2860, subdivision (a), provides in relevant part: "If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel."

Section 2860, subdivision (b), provides in relevant part: "For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist."

Section 2860, subdivision (c), provides in relevant part: "When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. *The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.*" (Italics added.)

The County sued Pacific, alleging Pacific was contractually obligated to provide a defense in the underlying lawsuits and bear all defense costs. The court summarily adjudicated that Pacific owed the County a duty to defend. However, the court denied the portion of the County's motion seeking summary adjudication that Pacific was required to pay all defense costs, concluding there were triable factual issues about the extent of Pacific's obligation in light of the County's responsibility to share defense costs since it was self-insured for much of the relevant period. The court also concluded with respect to the second underlying lawsuit there was a triable factual issue about the extent of Pacific's responsibility since section 2860 limited the hourly attorney fee rate Pacific was required to pay to defend the County.

The parties stipulated to entry of judgment declaring Pacific had a duty to defend the County in both underlying lawsuits, Pacific was responsible for 50 percent of reasonable defense costs including attorney fees in each suit, and section 2860, subdivision (c), applied to limit the hourly attorney fee rate Pacific must pay to defend the second of those actions. The court entered judgment on the parties' stipulation.

Pacific appeals the portion of the judgment declaring it had a duty to provide the County with a defense in the underlying lawsuits. The County appeals the portions of the judgment providing that Pacific was responsible only for 50 percent of the defense costs in the two underlying actions subject to section 2860's limitation in the second action.

II

FACTS

A

*County Operates Landfill While Insured by Pacific*

Effective December 1, 1947, Pacific provided the County with CGL coverage for bodily injury damages under policy No. LAC 31472. Under the policy, Pacific agreed to "insure the Insured against loss by reason of the liability imposed by law upon the Insured, or assumed by the Insured under written contract, for damages, including damages for loss of services, on account of occurrences causing bodily or mental injuries or illness . . . suffered or alleged to have been suffered during the policy period . . . ." Pacific also agreed to "defend suits for damages, even if groundless, brought on account of such occurrences in the name and on behalf of this Insured . . . ."

In 1955 the County began operating a waste disposal facility in Ontario, California, known as the Milliken Avenue Landfill (the Landfill).

Effective October 23, 1962, endorsement 66 of policy No. LAC 31472 extended "personal injury liability coverage" for "all sums which the insured shall become legally obligated to pay as damages because of injury sustained by any person or organization and arising out of" certain specified "hazards," including "invasion of privacy, wrongful eviction or wrongful entry . . . ." Under that endorsement, Pacific also agreed to "defend any suit against the insured alleging such injury and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent . . . ."

Effective July 23, 1965, Pacific provided the County with CGL coverage for personal liability and property damage liability under policy No. LP 10100. Under the policy, Pacific agreed to "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of liability imposed by law . . . or liability assumed by contract, insofar as the named insured may legally do so, for damages: (1) because of bodily injury, sickness or disease . . . sustained by any person or persons, or (2) because of any other injury a person may suffer to his person, including . . . invasion of privacy, wrongful eviction or wrongful entry." Pacific also agreed to "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of liability imposed by law . . . or liability assumed by contract, insofar as the named insured may legally do so, for damages, including consequential damages, because of injury to or destruction of property, including the loss of use thereof." Pacific further agreed to "defend" in the County's "name and behalf any suit against the insured claiming such damages, even if such suit is groundless, false or fraudulent . . . ." The policy provided it applied "only to occurrences which take place during the policy period . . . ." The policy defined "occurrence" as "an accident or a continuous or repeated exposure to conditions which result in injury to persons or damage to property during the policy period . . . ."

On September 15, 1968, policy No. LAC 31472 expired.

On July 23, 1973, the County terminated policy No. LP 10100 before its expiration. The County did not purchase another primary CGL policy.

B

*Neighboring Landowners Sue the County*

In 1980 Vina Vista Venture-New Joint Venture (VVV) apparently granted Ontario Industrial Partners (OIP) an option to buy property adjoining the County's Landfill.

On July 3, 1986, OIP sued the County for alleged damage to the property adjoining the Landfill. (Ontario Industrial Partners v. County of San Bernardino (Super. Ct. San Bernardino County, 1986, No. OCV 38850)—the OIP action.) Asserting causes of action for negligence, interference with prospective economic advantage, nuisance, injunction and inverse condemnation, OIP's complaint alleged the County negligently allowed dangerous gases to migrate from the Landfill onto the adjacent property causing permanent injury to the property upon exposure, contaminating its soil, requiring removal of hazardous waste from the property, and diminishing the property's market value.

On December 10, 1986, the County tendered defense of the OIP action to Pacific under policy No. LP 10100.

On September 30, 1987, Pacific advised it would provide the County a defense in the OIP action under reservation of rights. Pacific consented to Latham & Watkins serving as independent counsel to defend the County in the OIP action.

On November 23, 1987, Pacific advised that the County must share in defense of the OIP action since the County "chose to be self-insured from 1973 forward" and that Pacific would contribute 50 percent of defense costs.

On July 10, 1990, VVV sued the County for alleged damage to the property adjoining the Landfill. (Vina Vista Venture-New Joint Venture v. County of San Bernardino (Super. Ct. San Bernardino County, 1990, No. RCV 054057)—the VVV action.) Asserting causes of action for negligence, interference with prospective economic advantage, nuisance, injunction and inverse condemnation, VVV's complaint alleged the County negligently allowed dangerous gases to migrate from the Landfill onto the adjacent property causing permanent injury to the property upon exposure, contaminating its soil, requiring removal of hazardous waste from the property, and diminishing the property's market value.

On August 21, 1990, the County tendered defense of the VVV action to Pacific under policy No. LP 10100 and advised that Latham & Watkins was its choice as defense counsel.

On August 19, 1991, the County settled the OIP action.

On December 10, 1991, Pacific advised it was declining to defend the VVV action on the ground the damages sought did "not constitute a claim for property damage caused by an occurrence."

On May 29, 1992, Pacific advised it agreed to provide the County a defense in the VVV action under reservation of rights and indicated it would "look to the County for its proportionate share of defense costs (50%) due to the election of the County to be self-insured." Citing section 2860, Pacific also stated it would pay $150 hourly for attorneys with at least four years of experience and $130 hourly for attorneys with less than four years experience.

## III

### SUPERIOR COURT PROCEEDINGS

On September 17, 1992, the County filed this lawsuit against Pacific for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and injunction. The County's complaint sought a declaration that Pacific had a duty to defend the OIP and VVV actions. The County's complaint also sought recovery of all defense costs incurred and to be incurred in those underlying actions.[3]

On July 22, 1993, the County filed a motion for summary judgment or summary adjudication, asserting Pacific was obligated to provide a defense and reimburse all past and future defense costs in the underlying actions. In moving for summary judgment, the County sought a determination Pacific had a duty to defend the County in the OIP and VVV actions, Pacific breached that duty in both lawsuits, and Pacific should be enjoined to pay the reasonable attorney fees/costs incurred by the County in defending the VVV action as such fees/costs were incurred. In its alternative request for summary adjudication, the County sought determinations there were no defenses to its causes of action for (1) declaratory relief about Pacific's duty to defend each underlying action, (2) Pacific's breach of contract in not defending the County in those actions, and (3) injunctive relief directing Pacific to pay defense fees/costs in the VVV action as incurred.

On December 13, 1993, after hearing, the superior court entered an order denying the County's motion for summary judgment. The court granted in part and denied in part the County's motion for summary adjudication. Specifically, the court summarily adjudicated as a matter of law that Pacific had a duty to defend the OIP and VVV actions, concluding the allegations of the complaints in those underlying actions sought to hold the County liable

---

[3]The County's complaint further alleged causes of action against Pacific involving indemnity and bad faith. Those claims were dismissed without prejudice upon Pacific's agreement to toll applicable statutes of limitation.

for damage and injury "potentially" covered under both policies. The court denied summary adjudication on the County's causes of action for breach of contract. Noting the County became "self-insured" as of July 23, 1973, and as a self-insurer during much of the relevant period the County was "responsible for sharing" in its defense costs, the court concluded there were triable issues as to how much of the County's defense in the underlying actions Pacific was responsible to pay and, with respect to the VVV action, section 2860 applied to limit the hourly attorney fee rate Pacific must pay toward such defense.[4]

In March 1994, the parties stipulated that judgment be entered declaring that Pacific had a duty to defend the County in the OIP and VVV actions from their inception. The parties also stipulated that judgment be entered ordering Pacific to reimburse the County within 45 days for Pacific's share of all reasonable attorneys' fees/costs incurred in defense of the VVV action not yet paid by Pacific and for Pacific's share of all future reasonable attorney fees/costs incurred in defense of the VVV action within 45 days of receiving billing statements from the County. The parties further stipulated that judgment be entered providing that Pacific was responsible for 50 percent of all reasonable attorney fees/costs incurred in defending the two underlying actions and that section 2860, subdivision (c), applied to limit the hourly attorney fee rate Pacific must pay to defend the County in the VVV action.

On March 22, 1994, in accord with the parties' stipulation, the superior court entered "Judgment By Court Under C.C.P. § 437c And Stipulated Judgment Disposing of Entire Action As To All Parties."

Pacific appeals the portion of the judgment declaring it had the duty to defend the County in the OIP and VVV actions.

The County appeals the portions of the judgment providing that Pacific was obligated for only 50 percent of defense costs incurred in defending the two underlying actions and that section 2860 applied to limit the hourly attorney fee rate Pacific was required to pay in defending the County in the VVV action.[5]

---

[4]Pacific has not contended section 2860 should apply to limit the hourly attorney fee rate it must pay in defending the County in the OIP action.

[5]On January 30, 1995, the court in the VVV action entered a defense judgment finding the County not liable for property damage. VVV appealed.

## IV

## DISCUSSION

### A

### *Scope of Review*

As noted, in summarily adjudicating the County's causes of action for declaratory relief, the superior court determined as a matter of law that Pacific had a duty to defend the County in the OIP and VVV actions. In concluding the County was not entitled to summary adjudication on its causes of action for breach of contract, the court stated there were triable factual issues as to how much of the costs of defending the County in the underlying actions Pacific was responsible to pay since the County as self-insured for a large portion of the relevant period was responsible for sharing in such defense costs and, with respect to the VVV action, section 2860 applied to limit the hourly attorney fee rate Pacific was required to pay. In summarily adjudicating the County's cause of action for injunctive relief, the court determined Pacific had the ongoing duty to defend the County in the VVV action since the inception of such lawsuit but stayed its ruling granting summary adjudication on such cause of action "subject to future findings by the Court" as to what portion of the County's defense in the VVV action Pacific was obligated to pay in light of the self-insured County's responsibility to share defense costs and section 2860's limitation on the hourly attorney fee rate.

After the superior court made such rulings, the parties stipulated to entry of judgment declaring Pacific had a duty to defend the County in both underlying actions, Pacific was responsible for 50 percent of all reasonable defense costs in those suits, and section 2860 applied to limit the hourly attorney fee rate Pacific must pay to defend the County in the VVV action. The court entered judgment upon the parties' stipulation.

By its express terms the judgment entered upon the parties' stipulation purports to dispose of the entire case. The precise wording of the stipulation is also susceptible to interpretation as foreclosing the parties' appeals.[6] Nonetheless, we interpret the stipulation as intended to preserve for appeal

---

[6]The entirety of the stipulation incorporated into the judgment provided:

"This court having, on September 3, 1993, granted, in part, the Motion for Summary Adjudication filed by COUNTY OF SAN BERNARDINO ('COUNTY'), and the parties having agreed to stipulate,

"IT IS DECREED AND ADJUDGED AND HEREBY STIPULATED by and between Plaintiff, COUNTY OF SAN BERNARDINO ('COUNTY'), and Defendant, PACIFIC INDEMNITY COMPANY

the three "pure" legal issues of Pacific's duty to defend the County in the underlying actions, the County's obligation to share in costs of defending those actions, and the applicability of section 2860 to limit the hourly attorney fee rate Pacific was required to pay for defense of the County in the VVV action. Hence, we entertain the parties' appeals. (*Building Industry Assn.* v. *City of Camarillo* (1986) 41 Cal.3d 810, 817 [226 Cal.Rptr. 81, 718 P.2d 68]; *Dong* v. *Board of Trustees* (1987) 191 Cal.App.3d 1572, 1577 [236 Cal.Rptr. 912].)[7]

However, on this record our review is necessarily limited. In addition to intending to preserve legal issues for appeal by entering into the stipulation, the parties also apparently sought to avoid factual findings by the superior court. As discussed, the only issue summarily adjudicated by the court was Pacific's duty to defend. The court's other rulings simply denied the County's motions for summary judgment and for summary adjudication on its causes of action for breach of contract. Such rulings, by definition, did not constitute factual findings but instead merely indicated the court concluded

('PACIFIC INDEMNITY'), through their respective counsel, that judgment be entered in favor of Plaintiff and against Defendant as follows:

"1. PACIFIC INDEMNITY had a duty to defend COUNTY in *Ontario Industrial Partners* v. *County of San Bernardino, et al.*, County of San Bernardino Case No. OCV 38850 (the '*OIP* action') from the inception of this action until it was settled.

"2. PACIFIC INDEMNITY has a duty to defend COUNTY in *Vina Vista Venture - New Joint Venture* v. *County of San Bernardino, et al.*, County of San Bernardino Case No. RCV054057 (the '*VVV* action') and has had the duty to defend COUNTY in the *VVV* action since the inception of this action.

"3. PACIFIC INDEMNITY is ordered: (a) to reimburse COUNTY within 45 days from the date of this Judgment for PACIFIC INDEMNITY's share of all reasonable attorneys' fees and cost incurred in defense of the *VVV* action which have not yet been paid by PACIFIC INDEMNITY as of the date of this Judgment, and (b) to reimburse COUNTY for PACIFIC INDEMNITY's share of all future reasonable attorneys' fees and costs incurred in defense of the *VVV* action within 45 days of receipt of billing statements from COUNTY or its counsel setting forth such fees and costs. PACIFIC INDEMNITY's share of reasonable attorneys' fees and costs incurred in defense of the *VVV* action is as stipulated by the parties below.

"ADDITIONALLY, IT IS HEREBY STIPULATED by and between COUNTY and PACIFIC INDEMNITY, through their respective counsel, that judgment be entered as follows:

"1. PACIFIC INDEMNITY is responsible for 50% of all reasonable attorneys' fees and costs incurred in defense of the *OIP* action from the inception of the action until settlement.

"2. PACIFIC INDEMNITY is responsible for 50% of all reasonable attorneys' fees and costs incurred in defense of the *VVV* action.

"3. California Civil Code section 2860(c) applies to limit the hourly rate PACIFIC INDEMNITY must pay to defend the *VVV* action.

"This Judgment by the Court and this Stipulated Judgment disposes of the entire action as to all parties."

[7]"[T]here is an exception to the rule that a party may not appeal a consent judgment. If consent was merely given to facilitate an appeal following adverse determination of a critical issue, the party will not lose his right to be heard on appeal. [Citations.]" (*Building Industry Assn.* v. *City of Camarillo, supra,* 41 Cal.3d at p. 817; *Dong* v. *Board of Trustees, supra,* 191 Cal.App.3d at p. 1577.)

triable issues of material fact remained for the trier of fact. (Cf. *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 301 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Indeed, the court's written order on the motions expressly contemplated future factual findings. However, by specifically declaring Pacific was responsible for 50 percent of defense costs incurred in the underlying actions subject to section 2860's limitation in the VVV action, the parties' stipulation stated legal conclusions necessarily involving factual considerations beyond any factual findings made independently by the superior court. In addition to discussing the three legal issues noted, the parties' appellate briefs now seek to argue various fact-dependent matters never litigated to resolution in the superior court, including Pacific's asserted breach of the contractual duty to defend, an asserted novation of Pacific's contractual obligation to defend, OIP's standing in the underlying action, and assertions of waiver and estoppel against each party. Since the parties declined to litigate such fact-dependent matters in the superior court and the court made no independent factual findings on such matters, we do not reach those fact-based contentions. Within those limitations, we proceed to consider the parties' appeals.

## B

### *Pacific's Appeal*

 Asserting the claims against the County in the underlying actions did not demonstrate the existence of any potential for coverage under its insurance policies so as to trigger a duty to defend, Pacific contends the superior court erred in determining Pacific was contractually obligated to defend the County in those underlying suits. We conclude the court properly determined Pacific had a duty to defend the County in the underlying actions.

### 1

#### *The Law*

##### (a)

##### *Duty to Defend*

 The Supreme Court has observed: "It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] (*Gray*).) As we said in *Gray*,

'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' [Citation.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]" (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics in original.)

■ "The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source. [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 300, italics in original.) " 'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citation.]' [Citation.]" (*Id.* at p. 295.) The "insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy. [Citation.]" (*Id.* at p. 299, italics in original.) "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor. [Citations.]" (*Id.* at pp. 299-300.)[8]

■ To prevail on the issue of the duty to defend, ". . . the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential.* In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 300, italics in original.) "The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown that there is *no* potential for coverage . . . . Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf. [Citation.]" (*Id.* at p. 295, italics in original.) Hence, once the insured establishes the potential of coverage, the insurer must defend the suit unless it conclusively refutes such potential. (*Id.* at pp. 295, 300.)

---

[8]In *California Union Ins. Co.* v. *Club Aquarius, Inc.* (1980) 113 Cal.App.3d 243 [169 Cal.Rptr. 685], the appellate court observed ". . . there exists a duty on the insurer to *defend* an action if potential liability to pay exists, even though that potential liability to pay is remote." (*Id.* at p. 247, italics in original.)

## (b)

### Trigger of Duty to Defend

■ "In the *third party* liability insurance context, 'trigger of coverage' has been used by insureds and insurers alike to denote the circumstances that activate the insurer's defense and indemnity obligations under the policy. . . . '[T]rigger of coverage' is a term of convenience used to describe that which, under the specific terms of an insurance policy, must happen in the policy period in order for the *potential* of coverage to arise. The issue is largely one of timing—what must take place *within the policy's effective dates* for the potential of coverage to be 'triggered'?" (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 655, fn. 2 [42 Cal.Rptr.2d 324, 913 P.2d 878], italics in original.) "A recurring problem in interpreting standard CGL policies that provide coverage for injuries 'caused by an occurrence' is determining what has come to be called the 'trigger of coverage'—that is, the operative event which activates the insurer's defense and indemnity obligations." (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 39 [52 Cal.Rptr.2d 690].)[9]

■ In *Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th 645, the Supreme Court concluded "the 'continuous injury' trigger of coverage should be adopted for third party liability insurance cases involving continuous or progressively deteriorating losses." (*Id.* at p. 655.) The court observed: "California courts have long recognized that coverage in the context of a liability insurance policy is established at the time the complaining party was actually damaged." (*Id.* at p. 669.) Noting that the standard CGL policy language "provides coverage for bodily injury and property damage that occurs during the policy period," the court stated that in "the case of successive policies, bodily injury and property damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods." (*Id.* at pp. 654-655, 689, fn. omitted.)

In *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.*, *supra*, 45 Cal.App.4th 1, the appellate court observed: "Case law has long established that the operative event triggering coverage is the injury. Because occurrence policies (as distinguished from claims-made policies) cover occurrences that result in injury 'during the policy period,' the courts in

---

[9]"As the Supreme Court recently explained, the word 'trigger' is not found in the CGL policies themselves, nor does the Insurance Code define 'trigger of coverage.' Instead, 'trigger of coverage' is a term of convenience used to describe what must happen in the policy period to give rise to insurance coverage. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th 645, 655, fn. 2.)" (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co.*, *supra*, 45 Cal.App.4th at p. 39.)

California and elsewhere have concluded that the policies are invoked, or 'triggered,' when the injury takes place. [Citations.] [¶] In *Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th 645, 669-670, the Supreme Court reaffirmed this rule and applied it for the first time to a case of continuous or progressively deteriorating injury. The court held that when the bodily injury or property damage continues throughout successive policy periods, all of the insured's policies in effect during those periods are triggered. [Citation.] Coverage is not limited to the policy in effect at the time of the precipitating event or conditions. [Citation.] Nor is coverage cut off once the injury or damage begins or becomes manifest. [Citation.]" (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* at pp. 39-40.)

2

*Analysis*

Pacific contends neither of the underlying actions claimed bodily injury, property damage or personal injury damages occurring during the time Pacific's policies were in effect. Pacific asserts the faces of the complaints in those underlying lawsuits eliminated the potential of coverage as a matter of law. Specifically, asserting policy No. LAC 31472, effective December 1947 to September 1968, was issued to cover occurrences caused by bodily injury, mental injury or illness, Pacific contends the personal injury coverage of such policy did not cover the property damages due to environmental contamination alleged in the underlying actions. Although noting property damage liability coverage for specific districts was added through various endorsements to policy No. LAC 31472, Pacific asserts the County did not purchase any property damage liability coverage under such policy for the alleged migration of gases from the Landfill. Further, although policy No. LP 10100, effective July 1965 to July 1973, provided property damage liability coverage "because of injury to destruction of property" caused by an "occurrence which takes place during the policy period," Pacific contends no duty to defend arose under such policy since the County assertedly failed to show the potential of an occurrence of property damage during the policy period. However, on this record we conclude the court properly determined a potential for coverage existed under policy No. LP 10100 triggering Pacific's duty to defend the County in the underlying lawsuits.[10]

_____

[10]In light of our conclusion the duty to defend arose under the property damage coverage of policy No. LP 10100, we do not address whether a duty to defend also arose under such

(a)

*Underlying Actions Triggered Potential for Coverage*

The complaint in the OIP action alleged: OIP held an irrevocable option to buy land adjacent to the Landfill; at all relevant times the County operated the Landfill; the County "failed to exercise due care in controlling, monitoring, maintaining and operating the Milliken Landfill and in storing and/or disposing of various materials at the Milliken Landfill"; as a result of the County's negligence, "dangerous gases, including methane, vinyl chloride and possibly other organic vapors, have migrated and are migrating through the air, over, upon, into and through the soils" of the adjoining property; and the migration of hazardous gases resulting from the County's negligence proximately caused OIP various damages including permanent injury to the adjoining property, decrease in such property's fair market value, loss of value of OIP's option, loss of profits, costs of "investigation, testing, taking precautions concerning the hazardous gases and mitigating the danger," and other general damages.

The complaint in the VVV action alleged: VVV owned the property adjacent to the Landfill; at all relevant times the County operated the Landfill; samples taken from drilled test wells on the property adjacent to the Landfill indicated that "methane and vinyl chloride gases are migrating laterally from" the Landfill onto such property; the County "failed to exercise due care in controlling, monitoring, maintaining and operating" the Landfill and "in storing and/or disposing of various materials" at the Landfill; as a result of the county's negligence, "dangerous gases, including methane, vinyl chloride and possibly other organic vapors have migrated and are migrating through the air and over, upon, into and through the soils" of the adjacent property; and the migration of hazardous gases resulting from the County's negligence proximately caused VVV various damages including permanent damage to the adjacent property, decrease in such property's fair market value, costs of "investigation, testing, taking precautions concerning the hazardous gases and mitigating the danger," costs of investigating the degree and lateral extent of the subsurface migration of the Landfill's decomposition gases, and other general damages.

The parties agree the County has owned and operated the Landfill since 1955. Since the complaints in the underlying actions alleged gases emitted from the Landfill "have migrated and are migrating" to and damaging the adjacent property without specifying the date such migration began, those

---

policy's personal injury coverage. Nor do we determine whether a duty to defend was triggered by potential coverage under policy No. LAC 31472.

complaints effectively alleged permanent damage to the adjacent property by migration of hazardous gases occurring sometime during the County's ownership of the Landfill from 1955 to the present. Both underlying complaints thus sought recovery for damages "the nature and kind against which" Pacific agreed to insure, to wit, property damage, and raised the potential that the County would be found liable for such property damage occurring during the 1965 to 1973 effective period of Pacific's policy No. LP 10100. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].)[11] Since the alleged damages potentially occurred during a time when Pacific's policy was in effect, the underlying actions thus triggered Pacific's duty to defend. (*Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 299.)[12]

In sum, the duty to defend " '. . . "may exist even where coverage is in doubt and ultimately does not develop." [Citation.]' [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 295.) "No one can determine whether the third party suit does or does not fall within the indemnification coverage of the policy until that suit is resolved . . . ." (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 271;[13] *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 850-852 [206 Cal.Rptr. 823].) Hence, once the potential of coverage arose under Pacific's policy, so too did its duty to defend the County in the underlying actions. (*Montrose Chemical Corp.* v. *Admiral Ins. Co., supra*, 10 Cal.4th at pp. 669-670; *Horace Mann Ins. Co.* v. *Barbara B., supra*, 4 Cal.4th at p. 1081; *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 275; *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra*, 45 Cal.App.4th at p. 40.) Further, since the County established the potential of coverage, Pacific was required to defend the underlying actions unless Pacific conclusively refuted such potential. (*Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at pp. 295, 300.) As we shall explain, Pacific did not make such conclusive showing.

---

[11]In *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, the Supreme Court stated: "We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend; we cannot absolve the carrier from the duty to defend an insured for loss of the nature and kind against which it insured." (*Id.* at p. 275.)

[12]Moreover, as discussed, the County was entitled to a defense from Pacific if the complaints in the underlying lawsuits alleged the County was liable for damages potentially covered under Pacific's policy or if those complaints *"might be amended to give rise to a liability that would be covered under the policy.* [Citation.]" (*Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 299, italics added.)

[13]In *Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d 263, the Supreme Court stated: "[I]n the instant case, the determination of whether the insurer engaged in intentional, negligent or even wrongful conduct depended upon the judgment in [the underlying action] . . . . The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended." (*Id.* at pp. 271-272.)

(b)

*1977 Engineering Report*

Pacific acknowledges that in *Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th 645, the Supreme Court "eliminated any doubt that may have existed that the occurrence of bodily injury or property damage during the policy period is the operative event that triggers coverage under CGL policies such as the Pacific Indemnity policy."[14] However, asserting that at the time the County tendered defense no potential existed that the damage alleged in the underlying actions had occurred during the policy period, Pacific contends it had no duty to defend those actions. According to Pacific, extrinsic "undisputed" facts known to the County at time of tender "conclusively" eliminated any potential for coverage.[15] Specifically, Pacific contends that engineering testing performed for the County in 1977 revealed the absence of the damage alleged by the underlying plaintiffs, to wit, release of gases from the Landfill, and thus demonstrated such alleged damage was not continuous but instead began only sometime after 1977. Hence, asserting the County failed to show that the damage alleged by the underlying plaintiffs commenced and continued repetitively at a time before expiration of the policy, Pacific concludes the County did not establish the existence of a potential of coverage triggering the duty to defend. We disagree.

Pacific had the duty to defend unless the underlying complaints could "by no conceivable theory raise a single issue which could bring [them] within

[14]Hence, Pacific effectively abandons any contention that property damage must "manifest" or be "discovered" during the policy period in order to trigger the duty to defend. In *Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th 645, the Supreme Court found no ambiguity in the language of the policy at issue there. (*Id.* at p. 668.) The court stated the policy "clearly and explicitly provides that the occurrence of bodily injury or property damage during the policy period is the operative event that triggers coverage." (*Ibid.*) The court also observed that "third party CGL policies do not impose, as a condition of coverage, a requirement that the damage or injury be discovered at any particular point in time. Instead, they provide coverage for injuries and damage caused by an 'occurrence,' and typically define 'occurrence' as an accident (or sometimes a 'loss'), including a 'continuous or repeated exposure to conditions,' that results in bodily injury or property damage during the policy period. . . . [N]othing about this language suggests a manifestation or discovery requirement as a prerequisite for triggering coverage. [Citation.]" (*Id.* at p. 664.)

[15]In *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th 287, the Supreme Court concluded that ". . . evidence extrinsic to the underlying complaint can defeat as well as generate a defense duty . . . ." (*Id.* at p. 291.) In *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1 [44 Cal.Rptr.2d 370, 900 P.2d 619], the Supreme Court stated: "[W]here the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. [Citations.]" (*Id.* at p. 19.)

the policy coverage." (*Gray* v. *Zurich Insurance Co., supra*, 65 Cal.2d at p. 276, fn. 15; cited with approval, *Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 300.) "The quoted language cannot reasonably be understood to refer to anything beyond a bare 'potential' or 'possibility' of coverage as the trigger of a defense duty." (*Montrose Chemical Corp.* v. *Superior Court, supra*, at p. 300.) Contrary to Pacific's contention, the 1977 engineering report did not conclusively demonstrate that no gases were emitted from the Landfill until after 1977. The 1977 report did not expressly state or otherwise indicate there was no possibility that hazardous gas migrated before the 1973 policy expiration. Indeed, the engineer who prepared the 1977 report testified such document was not probative on whether migration of gas occurred during the period when Pacific's policy was in effect. Instead, according to the engineer, such report simply indicated that for two weeks in 1977 no methane gas was detected outside the Landfill. Moreover, the plaintiffs in the underlying actions could have introduced evidence contradicting the 1977 engineering report or otherwise showing that hazardous gases migrated from the Landfill to the adjacent property during the policy period. In sum, the 1977 engineering report did not remove the potential that damage occurred during Pacific's policy period and thus did not defeat Pacific's duty to defend. (*Id.* at p. 291.) Where, as here, ". . . the evidence adduced in the declaratory relief action does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy, 'the duty to defend is then *established,* absent additional evidence bearing on the issue.' [Citation.]" (*Id.* at p. 301, italics in original.)

Moreover, Pacific could not properly avoid its duty to defend by relying upon a coverage defense related to a critical issue in the underlying lawsuits, to wit, that there was no "occurrence" during the policy period. (*Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1086; *Garriott Crop Dusting Co.* v. *Superior Court* (1990) 221 Cal.App.3d 783, 797 [270 Cal.Rptr. 678]; cf. *Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at p. 302.) In *Horace Mann Ins. Co.* v. *Barbara B.,* the Supreme Court rejected the appellate court's conclusion that evidence indicating there was no property damage allowed the insurer to abandon its duty to defend: "This conclusion ignores the insurer's promise to defend the insured against groundless, false, and fraudulent claims. An insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought. To adopt the reasoning of the Court of Appeal would be to read out of existence the 'groundless, false, or fraudulent' clause that is universally common in liability insurance policies." (4 Cal.4th at p. 1086, italics in original.) Hence, if the claims of the underlying plaintiffs were "indeed so insubstantial as not to warrant any

damages," Pacific "should have raised that defense" for the County's benefit in the underlying actions "rather than in this declaratory relief action to [the County's] detriment. [Citation.]" (*Ibid.*)

### (c)

### *Statute of Limitations*

Noting "the time of the occurrence of an accident within the meaning of an indemnity policy is . . . the time when the complaining party was actually damaged," Pacific contends the faces of the complaints in the underlying actions showed that the underlying plaintiffs' alleged damage was excluded from coverage. (*Remmer* v. *Glens Falls Indem. Co.* (1956) 140 Cal.App.2d 84, 88, 90 [295 P.2d 19, 57 A.L.R.2d 1379].) Specifically, asserting the underlying lawsuits could properly encompass only the damages included in the underlying plaintiffs' administrative claims against the County, Pacific contends those administrative claims alleged the damage occurred more than a decade after the policy expired, to wit, within the one-year periods after the causes of action accrued upon the damage becoming apparent and discoverable. (Gov. Code, §§ 900, 911.2; *Amador Valley Investors* v. *City of Livermore* (1974) 43 Cal.App.3d 483 [117 Cal.Rptr. 749].)[16] Pacific confuses a potential limitation on the time for commencing the underlying actions with the time when damage occurred, the relevant inquiry under Pacific's policy. As discussed, the underlying actions alleged the damage potentially occurred during the effective period of the policy. However, regardless when the damage occurred, the statute of limitations did not begin to run until the cause of action accrued. (*Bellman* v. *County of Contra Costa* (1960) 54 Cal.2d 363, 369 [5 Cal.Rptr. 692, 353 P.2d 300]; *CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536-1537 [282 Cal.Rptr. 80]; *Amador Valley Investors* v. *City of Livermore, supra,* at p. 490.) Hence, the underlying plaintiffs could have sought to avoid the statute of limitations by arguing that although the contamination of the property adjoining the Landfill occurred in the past, such damage was not discovered until shortly before their administrative claims were filed. Thus, the success of any such statute of limitations defense to the underlying actions was not a certainty. Since a successful limitations defense to the

---

[16]On July 11, 1985, OIP presented the County with an administrative claim asserting that on September 12, 1984, OIP received notice of damage to the property adjoining the Landfill, to wit, that drilled test wells indicated Landfill gases migrated laterally onto such adjoining property.

On June 20, 1986, VVV presented the County with an administrative claim asserting that on September 12, 1984, VVV received notice of potential damage to the property adjoining the Landfill and that Landfill gases were migrating onto such adjoining property causing OIP to reconsider its option to buy and diminishing the property's worth.

underlying actions was speculative, the potential for coverage under Pacific's policy was not foreclosed. Further, Pacific should have raised the statute of limitations issue to aid the County's defense of the underlying actions rather than as a reason to abandon such defense. (*Garriott Crop Dusting Co. v. Superior Court, supra*, 221 Cal.App.3d at pp. 796-797.)[17]

## (d)

### Conclusion

In sum, it "has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. [Citations.] This duty, which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 19.) A "potential for coverage, whether found within the four corners of the complaint or in facts extrinsic to it, gives rise to the defense duty. [Citation.]" (*Horace Mann Ins. Co. v. Barbara B., supra*, 4 Cal.4th at p. 1086.)

The superior court correctly concluded that Pacific had a duty to defend both underlying actions as a matter of law since the underlying complaints revealed a potential for coverage. Once such potential liability was established, Pacific was required to defend the underlying actions since Pacific did not produce evidence conclusively refuting such potential. (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal.4th at pp. 295, 300.) Hence,

---

[17]In *Garriott Crop Dusting Co. v. Superior Court, supra*, 221 Cal.App.3d 783, the appellate court observed: "If the applicable statutes of limitations do ultimately preclude the [underlying plaintiff] from recovering for damage suffered during the [insurer's] policy periods, [the insurer] may be able to withdraw from the defense of the [underlying plaintiff's] action and avoid any obligation to indemnify against an ultimate jury verdict. Effectiveness of a statute of limitations is not a certainty, however; equity may prohibit [the policyholder] from effectively raising the statute of limitations defense. [Citation.] Thus this defense is not a certainty but a mere potentiality, and the duty to initially defend [the policyholder] exists regardless of *potentially* meritorious defenses to the [underlying plaintiff's] claims. Only after the trial court in the [underlying plaintiff's] action resolves such defenses in [the policyholder's] favor can [the insurer] step away from its contractually imposed obligation 'to defend any suit against the Insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless . . . .' [Citations.]" (*Id.* at pp. 796-797, italics in original.) The appellate court concluded "the court in the [underlying plaintiff's] action has not ruled on the statute of limitations. Applicability of the defense remains an unknown. [The insurer] may thus not yet rely on the statute as a means of avoiding its coverage duties. Instead, [the insurer] should raise the limitations defense in the substantive action for [the policyholder's] benefit, rather than in the instant action to [the policyholder's] detriment." (*Id.* at p. 797.)

the portion of the judgment declaring Pacific had a duty to defend the County in the underlying lawsuits must be affirmed.

## C

### *The County's Appeal*

#### 1

##### *The County Had No Obligation to Contribute to Defense*

■ The County contends the superior court erred in concluding the County must pay a portion of its own defense costs. Asserting Pacific's duty to defend was triggered by the existence of the potential for coverage with respect to the underlying actions, the County contends it was entitled to a complete defense of those underlying actions even if property damage potentially occurred in whole or in part after expiration of Pacific's policies. The County further contends any equity-based "duty to apportion" among multiple insurers was inapplicable here because the County was not an insurance company. Hence, the County concludes it was entitled to full reimbursement from Pacific of all reasonable past and future defense costs. We agree.

In *Horace Mann Ins. Co.* v. *Barbara B., supra,* 4 Cal.4th 1076, the Supreme Court observed that ". . . an insurer has a duty to defend the entire third party action if any claim encompassed within it potentially may be covered . . . ." (*Id.* at p. 1084.) Stated otherwise, ". . . if an insurer is bound to defend an action based on the assertion of one covered claim, it must defend the entire action even though some portions of it involve noncovered claims. [Citation.]" (*Devin* v. *United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149, 1157 [8 Cal.Rptr.2d 263]; accord, *Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 944 [208 Cal.Rptr. 806].) Indeed, "an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." (*Horace Mann Ins. Co.* v. *Barbara B., supra,* at p. 1081.) Hence, since potential for coverage existed under Pacific's policy, Pacific was contractually obligated to provide a complete defense to the County.

However, although an insurer owing a duty to defend must defend the entire underlying action, allocation of defense costs may later be apportioned in certain situations involving multiple insurers. As the appellate court observed in *Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963 [39 Cal.Rptr.2d 520], an insurer's "unilateral limitation of its responsibility is

not justified. If it owes any defense burden it must be fully borne [citation] with allocations of that burden among other responsible parties to be determined later." (*Id.* at p. 976, fn. 9.) Thus, Pacific contends the County as "a sophisticated entity" was required to contribute "an equitable share" of the costs of defending the underlying actions since the County was self-insured during much of the relevant period of the allegedly covered underlying claims. Pacific's contention is without merit. As we shall explain, although such defense costs may be allocated among insurers, such "duty to apportion" does not apply to deny a policyholder its contractual right to a complete defense where the policyholder was not insured at all times. (*Truck Ins. Exchange* v. *Amoco Corp.* (1995) 35 Cal.App.4th 814, 823, 827-828 [41 Cal.Rptr.2d 551]; cf. *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* 45 Cal.App.4th at pp. 55-57.)[18]

In *Truck Ins. Exchange* v. *Amoco Corp., supra,* 35 Cal.App.4th 814, the appellate court observed: "Whether an entity is an insurer does not depend on the entity's size, sophistication, corporate retention policies, or claims handling abilities. [Citations.] Rather, by statute, an 'insurer' is a 'person who undertakes to indemnify another by insurance.' (Ins. Code, § 23.) Insurance is defined as 'a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event.' (Ins. Code, § 22.) . . . 'Case law has interpreted [Insurance Code section 22] as requiring two elements: "(1) a risk of loss to which one party is subject and a shifting of that risk to another party; and (2) distribution of risk among similarly situated persons. [Citations.]" [Citation.]' [Citation.]" (*Id.* at p. 823.) The appellate court also stated: "An entity that self-insures is not an insurer within the meaning of Insurance Code sections 22 and 23. 'A self-insurer enters into no contract to indemnify another.' [Citation.]" (*Ibid.*)[19] Hence, the appellate court concluded: "Contribution claims are matters solely between insurers. An insurer . . . may not seek contribution from a self-insured entity because 'the obligations arising from

---

[18]In *Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553 [91 Cal.Rptr. 153, 476 P.2d 825], the Supreme Court suggested an insurer might avoid paying for a portion of the insured's defense if the insurer produced "undeniable evidence of the allocability of specific expenses" incurred solely on account of uncovered claims. (*Id.* at p. 564.) However, Pacific did not produce "undeniable" evidence that any specific defense costs could be allocated to any specific uncovered claim.

[19]In *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519], the court stated that an "allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event." (*Id.* at p. 523; cited with approval, *Truck Ins. Exchange* v. *Amoco Corp., supra,* 35 Cal.App.4th at p. 824.)

a policy of insurance do not extend to a self-insurer.' [Citation.]" (*Id.* at p. 828.)[20]

In sum, the County was not an insurer for purposes of allocation of costs of defense of the underlying actions. (*Truck Ins. Exchange* v. *Amoco Corp., supra,* 35 Cal.App.4th at pp. 823, 827-828; cf. *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* 45 Cal.App.4th at pp. 55-57.) Hence, Pacific remained contractually obligated to provide the County with a complete defense of those underlying actions, not simply a "share" of such defense. Thus, the portion of the judgment providing Pacific was responsible only for 50 percent of the defense costs in the underlying actions must be reversed.

---

[20]In *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* 45 Cal.App.4th 1, the appellate court concluded ". . . apportionment among multiple insurers . . . has no bearing upon the obligations of the insurers to the insured. The insurance policies obligate the insurers to pay on behalf of a policyholder 'all sums' that the policyholder becomes legally obligated to pay as damages because of bodily injury during the policy period. We interpret this language to mean that once coverage is triggered, the insurer's obligation to the policyholder is to cover the policyholder's liability 'in full' up to the policy limits. It is irrelevant that only part of the [injury] developed during any single policy period or during a period in which the manufacturer had no insurance. The logical consequence of this ruling is that the policyholder is covered (up to the policy limits) for the full extent of its liability and need not pay a pro rata share. [Citations.]" (*Id.* at pp. 56-57.) The appellate court observed that ". . . a distinction must be drawn between apportionment among multiple insurers and apportionment between an insurer and its insured. This distinction was noted in *Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th 645, 665: 'In suits between an insured and an insurer to determine coverage, interpretation of the policy language . . . will typically take precedence. . . . [¶] In contrast, where two or more CGL carriers turn to the courts to allocate the costs of indemnity for a paid loss, different contractual and policy considerations may come into play in the effort to apportion such costs among the insurers. The task may require allocation of contribution amongst all insurers on the risk in proportion to their respective policies' liability limits (such as deductibles and ceilings) or the time periods covered under each such policy.' " (*Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* at p. 56.)

In *Armstrong World Industries, Inc.* v. *Aetna Casualty & Surety Co., supra,* 45 Cal.App.4th 1, the appellate court also observed that "most courts" have held that an insurance policy's " 'other insurance' refers only to another policy, not to self-insurance. [Citations.]" (*Id.* at p. 56, fn. 21.) The court further observed: "[I]t would be virtually impossible to compute the policyholder's share of the losses for periods of no insurance. . . . 'We have no authority upon which to pretend that [the insured] also has a "self-insurance" policy that is triggered for periods in which no other policy was purchased. Even if we had the authority, what would we pretend that the policy provides? What would its limits be?' [Citations.]" (*Id.* at pp. 56-57, fn. 21.)

## 2

### *Section 2860 Not Applicable*

■ In *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (*Cumis*), we concluded ". . . where there are divergent interests of the insured and the insurer brought about by the insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured." (*Id.* at p. 375.) Section 2860, subdivision (a), provides that when such conflict of interest arises, an insurer with the duty to defend must provide independent counsel to represent the insured.[21] Section 2860, subdivision (b), provides that ". . . when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." When an insurer's reservation of rights creates such conflict of interest, section 2860, subdivision (c), imposes a specific limitation on the hourly rate an insurer must pay to independent *Cumis* counsel selected by the insured.

■ The County contends the superior court erred in determining section 2860 applied to limit the hourly attorney fee rate Pacific was required to pay in defending the VVV action. The County attacks as impermissible the court's assertedly "retroactive" application of the fee limitation provision of section 2860 to Pacific's policies issued before the statute's enactment.[22] The superior court essentially agreed with Pacific's contention that application of the statutory limitation would not be "retroactive" here since the underlying VVV action against the County was filed after enactment of the statute. However, we do not reach the retroactivity issue since, as we shall explain, application of the statute on this record was otherwise improper.

Although stipulating in the superior court to the applicability of section 2860, Pacific now concedes that "no *Cumis* type conflict arose out of" its reservation of rights.[23] Nonetheless, Pacific contends we should "affirm that although no conflict arose out of" its reservation of rights in the VVV action,

---

[21]Section 2860 was added by Statutes 1987, chapter 1498, section 4, pages 5779-5780.

[22]The County also asserts Pacific lost any right to the benefit of the statutory limitation by ignoring the County's request for defense in the VVV action for almost two years and thus forcing the County to hire defense counsel on its own. However, such assertion involves factual issues not litigated to resolution in the superior court.

[23]Pacific also acknowledges the superior court did not address whether a conflict of interest was created and the issue "was not even briefed."

its obligation for fees was "limited as outlined in the reservation letter."[24] Hence, in essence, Pacific does not contend section 2860 itself was directly applicable here. Instead, Pacific contends in light of the County's accepting Pacific's 50 percent contribution to defense of the OIP action, Pacific's reservation letter with respect to the VVV action formed the basis of a new "compromise" agreement with the County adopting as a term of Pacific's VVV defense obligation the substance of "the statutory guidelines" limiting the hourly rate of attorney fee reimbursement. However, such contention involves issues of fact not litigated to resolution in the superior court and is thus beyond our limited scope of review.

As noted, by its terms, section 2860 applies only where a "conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel for the insured . . . ." (*Id.* at subd. (a).) Since as conceded by Pacific no *Cumis* conflict existed here, the statute was inapplicable. Hence, the portion of the judgment providing that section 2860, subdivision (c), applied to limit the hourly attorney fee rate Pacific was required to pay in defending the County in the VVV action must be reversed.

V

DISPOSITION

The portion of the judgment declaring Pacific had the duty to defend is affirmed. The portions of the judgment providing Pacific was obligated only to pay 50 percent of defense costs subject in one instance to the limitations of Civil Code section 2860 are reversed. The superior court is directed to enter a new judgment declaring Pacific is obligated to pay all the County's reasonable defense costs without limitation under section 2860. The County is entitled to costs on appeal.

Nares, J., and Haller, J., concurred.

The petition of appellant Pacific Indemnity Company for review by the Supreme Court was denied October 1, 1997. Kennard, J., was of the opinion that the petition should be granted.

---

[24]Pacific's May 29, 1992, reservation of rights letter stated in part: "As to the current litigation of *Vina Vista Venture vs. the County of San Bernardino,* Pacific Indemnity will afford a defense to the County subject to a full reservation of rights and advises that the application of C.C.P. [*sic*] 2860 provisions will be enforced in full and that Pacific will look to the County for its proportionate share of defense costs (50%) due to the election of the County to be self-insured. The current rate of reimbursement for defense costs is $150.00 for attorneys with 4 years or more of experience and $130.00 for attorneys with less than 4 years of experience."