[No. B075894. Second Dist., Div. Three. June 6, 1995.]

TRUCK INSURANCE EXCHANGE, Plaintiff and Appellant, v. AMOCO CORPORATION, Defendant and Respondent.

COUNSEL

Kincaid, Gianunzio, Caudle & Hubert, Patrick J. Hagan and Steven E. McDonald for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, David M. Roberts, Eve M. Coddon and Karen L. Kleiderman for Defendant and Respondent.

Heller, Ehrman, White & McAufliffe, Wondie Russell and David B. Goodwin as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**KITCHING, J.**—In a matter involving issues of insurance coverage, plaintiff and appellant Truck Insurance Exchange (Truck) appeals from the summary judgment entered in favor of defendant and respondent Amoco Corporation (Amoco) in a declaratory relief action alleging Amoco to be the "de facto" insurer for Cyprus Amax Minerals Company (Cyprus), a former wholly owned subsidiary, based on the parent corporation's corporate policy of self-insuring itself and its subsidiaries.[1] Truck argues summary judgment was improper because Amoco's statements and actions established the former parent corporation as the functional insurer of Cyprus, thereby obligating Amoco to reimburse Truck who, with other liability insurers, paid for the defense and indemnity of Cyprus in talc-related tort litigation.

We determine Amoco was not Cyprus's insurer and had not agreed to defend and indemnify its former subsidiary. The trial court properly entered summary judgment. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This is an action for reimbursement of defense costs. The central issue in this appeal is whether, under the facts of this case, a parent company can be

[1] The trial court concurrently granted Amoco's motion for summary judgment and denied Truck's cross-motion for summary judgment and summary adjudication of issues.

transformed into a liability insurer by virtue of its self-insurance program, enabling a former subsidiary's insurers to seek contribution for defense and indemnity expenses from the former parent company.

### Relationship of Amoco and Cyprus

Amoco is a parent company for a worldwide integrated petroleum and chemical enterprise and has numerous subsidiaries. In 1979, Amoco acquired Cyprus, a company engaged in the business of mining and distributing industrial minerals, including talc.[2] Cyprus remained a wholly owned subsidiary of Amoco until 1985, when it was spun off to the Amoco shareholders and became an entity unrelated to Amoco. As part of Amoco's divestiture of Cyprus, the parties signed a "Memorandum of Agreement" which stated, in relevant part: "5. Cyprus will be responsible for all claims, whether or not asserted, and liabilities related to its business as it exists on the Distribution Date, including any litigation currently pending or which may be commenced after the Distribution Date."

### Insurance Coverage

Cyprus was insured by Fireman's Fund Insurance Company (Fireman's Fund) from May 23, 1961, to October 15, 1964, by Continental Casualty Company (Continental)/CNA Companies from 1964 to 1974, and by Truck from October 1, 1974, to July 1, 1980. In 1980, Cyprus, now an Amoco subsidiary, advised Truck its insurance policies would not be renewed because Cyprus would be included in Amoco's corporate insurance program.

Under the terms of Amoco's internal insurance program, Amoco and each of its subsidiaries were self-insured for the first $5 million of loss for third party liability claims.[3] Accordingly, during the period Cyprus was a wholly owned subsidiary of Amoco, 1980 to 1985, Cyprus was also self-insured for $5 million for third party liability claims.

---

[2]In 1979, Cyprus became a wholly owned subsidiary of Amoco. On September 21, 1979, Cyprus Mines Corporation merged into Amoco Cym Corporation. The latter company became the surviving entity, renamed Cyprus Mines Corporation, a wholly owned subsidiary of Amoco. In 1980, Amoco transferred all of its shares of Cyprus Mines Corporation to Amoco Minerals Company, an existing wholly owned subsidiary of Amoco. On or about July 1, 1985, Amoco Mineral Company changed its name to Cyprus Minerals Corporation.

[3]The statement of Amoco's "Corporate Insurance Policy" read, in relevant part: "It shall be the practice of Amoco and all wholly-owned subsidiaries to assume all insurable risks, except: [¶] 1. Where losses associated with property, business interruption, and liability exposures can seriously affect the earnings of the consolidated enterprise. To avoid such disability, it shall be corporate policy to purchase . . . liability insurance with a deductible not to exceed $5 million."

In 1985, after Cyprus became a corporation independent of Amoco, Cyprus purchased liability insurance coverage from Old Republic Insurance Company (Old Republic).[4]

*Insurance Coverage and Talc-related Litigation*

Beginning in 1979, plaintiffs filed actions against Cyprus alleging injuries caused by exposure to asbestos-containing talc in products the company manufactured and distributed (talc-related litigation). In 1986 or 1987, Amoco began receiving correspondence regarding talc-related claims, and forwarded the documents to Cyprus's insurers. In 1986, Cyprus notified Fireman's Fund, Old Republic and .Truck of the talc-related claims and demanded a defense and indemnification, which the insurance companies provided. Cyprus did not demand a defense or indemnification from Amoco.

In 1987 Truck and the other primary carriers asked Amoco to join in the coordination of Cyprus's defense. The insurers made the request on the ground they "were advised that Amoco owned Cyprus from approximately 1980 through 1985, and that Amoco was self insured on the primary level. Hence Amoco may have some responsibility for these [talc] claims." Amoco told the insurers the company never was the primary insurer for Cyprus, and refused to be involved in coverage negotiations. Amoco told the insurers, in part: "There is no basis in law or fact for your allegation that Amoco Corporation has a duty to defend or indemnify your insured, Cyprus . . . . You have a contractual obligation to do so under the terms of your contract of insurance."

In the fall of 1988, Truck and the other insurers entered into an "Interim Compromise Defense and Indemnification Cost Sharing Agreement Re: Cyprus" (Interim Agreement) regarding their defense and indemnification obligations. Pursuant to the terms of the Interim Agreement, Truck, and the others, agreed not to file against Cyprus "any complaint or cross-complaint with respect to Cyprus' insurance coverage for Talc-Related Cases, unless called for by court order."

*Complaint*

On October 4, 1990, Fireman's Fund, Old Republic and Truck filed a first amended declaratory relief action against Amoco, and additionally alleged causes of action for breach of written contract (first cause of action), breach of oral contract (second cause of action), breach of contract implied by conduct (third cause of action), and equitable contribution (fourth cause of

---

[4]Cyprus was insured by Old Republic from July 1, 1985, to July 1, 1988.

action).[5] The gravamen of the complaint was that as a result of Amoco's words and conduct, based on the internal self-insurance program, the company functioned as Cyprus's "de facto" primary insurer and should be obligated to participate with other primary carriers in the defense and indemnification of its former subsidiary.

On October 15, 1990, Amoco filed an answer denying the allegations and asserting as a defense, inter alia, the lack of privity between Amoco and Cyprus. On July 22, 1991, after being granted leave by the court, Amoco filed a cross-complaint against Cyprus for indemnity and contribution.[6] In its answer, Cyprus denied the allegations and asserted various defenses.

*Summary Judgment*

On March 17, 1992, Amoco moved for summary judgment on grounds (1) Amoco never insured Cyprus, and (2) Cyprus expressly acknowledged liability for all claims asserted against it, and, therefore, had no rights against Amoco to which Truck could allege to be subrogated. Declarations in support of Amoco's motion provided details of Amoco and Cyprus's legal relationship and of the insurance program which established the parent company and the subsidiary as separate self-insuring entities, and provided evidence Amoco never agreed to defend or indemnify Cyprus. Discovery responses established lack of any agreements, written or otherwise, to defend or indemnify Cyprus. The declarations, combined with discovery responses and corporate documents, refuted Truck's "de facto" insurer charges.

In opposition, and in a cross-motion for summary judgment or in the alternative for summary adjudication of issues, Truck similarly argued Amoco's words and conduct created an agreement to defend and indemnify Cyprus, and the terms of Amoco's extensive insurance program established the parent company as a "functional" insurer of its subsidiary. Declarations in support of Truck's cross-motion outlined the insurance coverage functions Amoco performed on behalf of its subsidiaries, and included opinion testimony of an insurance consultant that Amoco's internal insurance program demonstrated all indicia of a primary insurance program. Truck did not controvert Amoco's evidence of a lack of an agreement with its former subsidiary.

---

[5]The initial complaint was filed May 29, 1990. The first amended complaint is the operative pleading in this action. In July 1991, after initial discovery, Fireman's Fund and Old Republic dismissed their claims, without prejudice, against Amoco. Truck, only, remained in the action, filing the cross-motion for summary judgment and pursuing this appeal.

[6]In accordance with terms of the Amoco-Cyprus 1985 "Memorandum of Agreement," Amoco's cross-complaint alleged that in the event Amoco were found liable to Cyprus's insurers, Amoco would be entitled to indemnification from Cyprus. The cross-complaint was rendered moot by the trial court's judgment in favor of Amoco on the complaint.

In response, Amoco further refuted Truck's position there was an express, oral, or implied agreement to defend or indemnify Cyprus, or that such an agreement could be based on Amoco's insurance program, by establishing Truck failed to cite to any evidence of any form of agreement, correspondence or policy that obligated Amoco to defend and indemnify Cyprus. Amoco further argued neither the Amoco insurance manual nor deposition testimony of Amoco's liability insurance manager established any defense or indemnification agreement. Additionally, testimony from an insurance consultant did not controvert the fact Amoco never agreed to defend or indemnify Cyprus; it merely provided an opinion that insurance services provided by Amoco for its subsidiaries required Amoco to be "treated as a primary carrier."

Amoco's position is further supported by Truck's statement of disputed and undisputed facts, in which the insurer admitted without dispute that, inter alia: (1) from 1979-1985 Cyprus was a wholly owned subsidiary of Amoco, (2) from 1979-1985, Amoco and each of its wholly owned subsidiaries were self-insured for the first $5 million of loss for third party liability claims, (3) from 1979-1985, Cyprus was self-insured for $5 million for third party liability claims, (4) from 1979-1985, Cyprus's defense and indemnification costs were charged to Cyprus, and (5) pursuant to the Interim Agreement, Truck was prohibited from filing a complaint against Cyprus.

On June 3, 1992 the trial court heard argument and granted Amoco's motion for summary judgment and denied Truck's cross-motion. In a January 22, 1993, order, the trial court ruled, in relevant part: "[A]s a matter of law . . . AMOCO was not an insurer of Cyprus. AMOCO never had a contractual obligation to defend or indemnify Cyprus. [Citations.] Furthermore, oral and implied contracts of insurance are impermissible. [Citations.] Therefore, AMOCO is entitled to judgment on all causes of action for breach of contract. [¶] AMOCO is entitled to judgment in its favor with respect to the breach of contract causes for the additional reason that each of the breach of contract causes of action is premised upon Truck's claim that it is subrogated to Cyprus' rights. [Citation.] However, an insurer may not maintain an action for equitable subrogation against a third party for breach of an agreement to provide insurance. [Citation.] [¶] AMOCO is entitled to judgment for the additional reason that Cyprus acknowledged liability for all claims asserted against it. . . . [¶] Further, . . . [s]ince AMOCO is not Cyprus' insurer, and has no contractual responsibility for Cyprus' loss, equitable contribution is not available as a remedy. [Citation.] Additionally, . . . Truck's complaint lacks any bases for determining the parties' legal rights and duties. [Citation.] . . . ." To support its finding there was no triable issue as to any material fact, the trial court cited to evidence Amoco proffered in support of its motion.

On January 22, 1993, the trial court entered judgment in favor of Amoco and against Truck on the first amended complaint. Notice of entry of judgment was filed on March 30, 1993.

On May 3, 1993, Truck filed a notice of appeal.

## CONTENTIONS

Truck contends the trial court erred in granting summary judgment because (1) Amoco's statements, acts, and deeds established the parent company as a "de facto" insurer of its subsidiary, Cyprus and therefore liable to Truck under the theory of equitable contribution, and (2) the court failed to comply with the provisions of Code of Civil Procedure, section 437c, subdivision (g).

## DISCUSSION

### Standard of Review

"Summary judgment is properly granted when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.] The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law. [Citation.] [¶] Appellate review of summary judgment is limited to the facts contained in the documents presented to the trial court. This court exercises its independent judgment as to the legal effect of the undisputed facts disclosed by the parties' papers. [Citations.] In so doing, we apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*Torres* v. *Reardon* (1992) 3 Cal.App.4th 831, 836 [5 Cal.Rptr.2d 52].)

We review Truck's claims considering these legal principles, keeping in mind the case turns on whether Amoco is or was the insurer of Cyprus.

### Amoco Neither Insured Nor Agreed to Defend and Indemnify Cyprus

Truck contends sufficient indicia established that Amoco was a "de facto" insurer that promised to provide the equivalent of an insurance policy

to itself and its subsidiaries such as Cyprus. We disagree. Amoco was self-insured and was not engaged in the insurance business.

■ Whether an entity is an insurer does not depend on the entity's size, sophistication, corporate retention policies, or claims handling abilities. (*Title Ins. Co.* v. *State Bd. of Equalization* (1992) 4 Cal.4th 715, 725-729 [14 Cal.Rptr.2d 822, 842 P.2d 121]; *Truta* v. *Avis Rent A Car System, Inc.* (1987) 193 Cal.App.3d 802, 812-814 [238 Cal.Rptr. 806]; *Richardson* v. *GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519, 523-525 [207 Cal.Rptr. 519].) Rather, by statute, an "insurer" is a "person who undertakes to indemnify another by insurance." (Ins. Code, § 23.) Insurance is defined as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." (Ins. Code, § 22.) A contract to insure is a written instrument, but oral contracts to insure are valid. (Ins. Code, § 380; *Spott Electrical Co.* v. *Industrial Indem. Co.* (1973) 30 Cal.App.3d 797, 805 [106 Cal.Rptr. 710].) "Case law has interpreted [Insurance Code section 22] as requiring two elements: '(1) a risk of loss to which one party is subject and a shifting of that risk to another party; and (2) distribution of risk among similarly situated persons. [Citations.]' [Citation.]" (*Title Ins. Co.* v. *State Bd. of Equalization, supra,* 4 Cal.4th at pp. 725-726.) However, the " 'mere fact that a contract contains these two elements [shifting and distribution of risk of loss] does not necessarily mean that the agreement constitutes an insurance contract for purposes of statutory regulation.' [Citation.] Rather than simply look to whether the contract involves an assumption of a risk, we will instead ask ' "whether that [assumption of risk] or something else to which it is related in the particular plan is its principal object and purpose." ' [Citations.]" (*Title Ins. Co.* v. *State Bd. of Equalization, supra,* 4 Cal.4th at p. 726.)

An entity that self-insures is not an insurer within the meaning of Insurance Code sections 22 and 23. "A self-insurer enters into no contract to indemnify another." (*Metro U.S. Services, Inc.* v. *City of Los Angeles* (1979) 96 Cal.App.3d 678, 683 [158 Cal.Rptr. 207].)

In *Richardson* v. *GAB Business Services, Inc., supra,* 161 Cal.App.3d 519, plaintiff was injured in a Safeway store and successfully prosecuted a personal injury claim. (*Id.* at p. 521.) Plaintiff then filed suit against Safeway and GAB Business Services, Inc., an independent adjustment firm, seeking to recover additional damages under Insurance Code section 790.03, which prohibits acts of deceptive and unfair competition in the business of insurance. (161 Cal.App.3d at pp. 521-522.) The complaint alleged Safeway was self-insured. (*Id.* at p. 521.) The issue was whether Insurance Code section 790.03 was applicable to a self-insured defendant. (161 Cal.App.3d at p. 522.)

The *Richardson* court considered the code definition of insurance and acknowledged that "[e]ssential to insurance is the element of shifting of the risk of loss, subject to contingent or future events, by legally binding agreement. [Citation.]" (*Richardson* v. *GAB Business Services, Inc., supra,* 161 Cal.App.3d at p. 523.) The court then stated: "It is apparent on the face of the complaint that there is no insurance contract and no insurance company involved in this case. The allegation of self-insurance, which is equivalent to no insurance, is repugnant to the concept of insurance which fundamentally involves the shifting to a third party, by contract, for a consideration, the risk of loss as a result of an incident or event. In the instant case the liability for the injury to plaintiff was shifted to no one. It remained with Safeway, the very entity that caused the injury." (*Ibid.*)

In our case, it is undisputed that Amoco was self-insured, and the subsidiary Cyprus was also separately self-insured. Truck so admitted in its responses to Amoco's separate statement of undisputed facts. Amoco's insurance manual clearly stated, in part, that "[Amoco] and all wholly-owned subsidiaries shall assume all insurable risks . . . ." The manual did not state that Amoco, *on behalf of all wholly owned subsidiaries,* shall assume all insurable risks. Accordingly, there was no shifting of any risk from Cyprus to Amoco and, as a matter of law, there was no agreement by Amoco to defend or indemnify Cyprus. (*Metro U.S. Services, Inc.* v. *City of Los Angeles, supra,* 96 Cal.App.3d at p. 683.) There was no evidence to the contrary. As a self-insured entity, the liability for plaintiffs' talc-related injuries actually remained with Cyprus. However, under terms of the Interim Agreement, Truck was prohibited from recouping defense and indemnification costs from Cyprus. Truck did not provide any evidence that would have created a triable issue of material fact regarding Amoco's status or the existence of an agreement.

Unable to hurdle the obstacle of Amoco's self-insured status, Truck presents a not-so-novel "implied contract" argument that the sophistication of Amoco's insurance program, combined with its claims adjustment and administrative procedures, transformed Amoco into an insurance company. (See *Richardson* v. *GAB Business Services, Inc., supra,* 161 Cal.App.3d at pp. 524-525 [where the plaintiff made a similar argument].)

"An implied contract ' ". . . in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established." ' [Citation.] It is thus an actual agreement between the parties, 'the existence and terms of which are manifested by conduct.' (Civ. Code, § 1621.) Although an implied

in fact contract may be inferred from the 'conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an intent to promise.' [Citation.]" (*Friedman* v. *Friedman* (1993) 20 Cal.App.4th 876, 887 [24 Cal.Rptr.2d 892].)

■■■ Truck argues *Nathanson* v. *Hertz Corp.* (1986) 183 Cal.App.3d 78 [227 Cal.Rptr. 799], supports its position Amoco should be treated as an insurer under the Insurance Code. However, under the facts of our case, *Nathanson* is inapplicable.

In *Nathanson, supra,* plaintiff was injured in an automobile accident by a vehicle owned by Hertz and rented to a David Cuyler (Cuyler). (*Nathanson* v. *Hertz Corp., supra,* 183 Cal.App.3d at p. 80.) "Pursuant to the automobile rental agreement between Hertz and Cuyler, Hertz agreed to provide liability coverage for Cuyler if he negligently caused personal injury or property damage to another while operating the rental car." (*Ibid.*) Plaintiff accepted a $9,000 settlement and then filed an action against Hertz for damages pursuant to Insurance Code sections 790.01, 790.03, subdivision (h). (183 Cal.App.3d at p. 80.) Hertz moved for summary judgment, alleging it was a self-insurer and not an insurance company. (*Id.* at p. 81.) The trial court granted the motion on the ground the issue had been decided in *Richardson* v. *GAB Services, Inc., supra.* (*Ibid.*)

The appellate court reversed the grant of summary judgment, finding significant differences between Hertz's and the Safeway's self-insurance situations. (*Nathanson* v. *Hertz Corp., supra,* 183 Cal.App.3d at p. 82.) The court found that ". . . Safeway self-insures against its own negligence and no contractual agreement exists between it and its customers of any kind. Hertz, on the other hand, by contract is agreeing to protect its rental customer against *his or her* negligence that causes damage to a *third person.*" (*Ibid.,* fn. omitted.) It was undisputed, inter alia, that Hertz's rental agreement included a contract of indemnity, Hertz regularly issued written contracts of liability insurance to the drivers under the terms of the rental agreement, the drivers notified Hertz of any accidents, Hertz investigated the claims, Hertz hired attorneys to compromise and litigate the claims, and Hertz defended Cuyler. (*Ibid.*) The court considered the liability provisions in Hertz's rental agreement and found the holding in *Richardson* inapplicable because "[a]lthough Hertz is a self-insurer, it is by the terms of its own agreement the insurer and its customers the insured. It is engaged in the liability insurance business in a substantial, although not exclusive manner and is subject to the provisions of section 790.03, subdivision (h)." (*Id.* at p. 85, fn. omitted.)

In our case, Amoco is a self-insurer within the meaning of *Richardson.* Unlike Hertz, Amoco did not also enter into an agreement, written or

otherwise, agreeing to provide a liability insurance policy to third parties, to wit, the subsidiaries. (See also *Grand Rent A Car Corp.* v. *20th Century Ins. Co.* (1994) 25 Cal.App.4th 1242, 1251-1252 [31 Cal.Rptr.2d 88].)

It is undisputed the claims division of Amoco's law department handles liability claims against Amoco and its subsidiaries, and that Amoco's insurance division performs services relating to risk evaluation, loss prevention, contract negotiation, and loss adjustment. It is also undisputed that Dradnats, Inc., an Amoco subsidiary, operated as an insurance broker for Amoco and the other subsidiaries, insurance program expenses for all subsidiaries were listed as administrative costs on Amoco's 10-K filings, and, Cyprus's defense and indemnification costs were charged to Cyprus.

Providing insurance-related services to its subsidiaries, however, did not establish Amoco as an entity engaged in the insurance business. (*Title Ins. Co.* v. *State Bd. of Equalization, supra,* 4 Cal.4th at pp. 725-726; *Bruenn* v. *Aetna Life Ins. Co.* (1987) 197 Cal.App.3d 1000, 1005 [243 Cal.Rptr. 262]; *Truta* v. *Avis Rent A Car System, Inc., supra,* 193 Cal.App.3d at pp. 812-814.) ■ " 'The question of whether an arrangement is one of insurance may turn, not on whether a risk is involved or assumed, but on whether that or something else to which it is related in the particular plan is its principal object and purpose.' " (193 Cal.App.3d at p. 812.)

■ In our case, an examination of the services Amoco provided its subsidiaries under the insurance program demonstrates a lack of substance to Truck's claim and the error of its conclusion regarding the object or purpose of Amoco's business activities. The function of Amoco's insurance program was not to require the parent company to provide insurance to the subsidiaries, but instead to require the subsidiaries to assume their own risk of loss. Amoco only provided the subsidiaries administrative support services to process the claims. None of the services Amoco provided either reallocated any risk of loss to Amoco or impliedly established that Amoco agreed to defend and indemnify any of the subsidiaries, including Cyprus. In fact, Cyprus paid its own defense and indemnfication costs. Cyprus never requested Amoco to provide a defense or indemnification against the talc claims. Cyprus agreed to be responsible for its own claims.

The record before us discloses neither an express or oral agreement, nor conduct on the part of Amoco from which it can be implied that Amoco intended to assume Cyprus's liabilities. The fact Amoco was self-insured "is totally inconsistent with an allegation of being engaged in the business of insurance. The former . . . renders it impossible to be engaged in the

business of insurance." (*Richardson* v. *GAB Business Services, Inc., supra,* 161 Cal.App.3d at p. 525.)

*Truck Is Not Entitled to Equitable Contribution*[7]

■ Truck contends it is entitled to seek contribution from Amoco on the ground Amoco breached a duty to Cyprus to defend against the talc-related actions. The contention is without merit.

■ The equitable contribution principle, enunciated in *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35-38 [17 Cal.Rptr. 12, 366 P.2d 455], "requires an equitable distribution of the loss among those who share liability for it." (*Patent Scaffolding Co.* v. *William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 517 [64 Cal.Rptr. 187].) The doctrine "is based on the common sense notion that where two indemnitors share equal contractual responsibility for a loss, the selection of which indemnitor is to bear the loss should not be left to the sometimes arbitrary choice of the loss claimant. [Citation.]" (*California Food Service Corp.* v. *Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 901 [182 Cal.Rptr. 67].)

■ Under the facts of our case, the principle of equitable contribution is inapplicable. First, as previously discussed, Amoco did not have a contractual obligation, or any obligation, to either pay for or share in the costs of Cyprus's defense. Contrary to Truck's assertion, the decision in *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* required the "insurers" to have a contractual obligation to the insured. (57 Cal.2d at pp. 35-38.) Second, Amoco is

---

[7]In the first amended complaint, Truck alleges, by paying for a portion of Cyprus's defense and indemnity against the talc-related actions, Truck became subrogated to Cyprus's contractual rights against Amoco to obtain such coverage. Truck now claims on appeal that it does not attempt to assert any rights under the 1985 agreement between Cyprus and Amoco. However, we briefly address the issue.

For purposes of subrogation, Truck " 'steps into the shoes' " of Cyprus. (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1595 [26 Cal.Rptr.2d 762].) Truck cannot have a claim for subrogation against Amoco unless Cyprus itself has a claim against Amoco. (*Troost* v. *Estate of DeBoer* (1984) 155 Cal.App.3d 289, 294 [202 Cal.Rptr. 47].) If Cyprus agreed not to assert a claim against Amoco, Truck as subrogee cannot assert that claim against Amoco. (*Fireman's Fund Ins. Co.* v. *Maryland Casualty Co., supra,* 21 Cal.App.4th at p. 1597.) In 1985, before Amoco spun its Cyprus subsidiary off to Amoco's shareholders, Amoco and Cyprus agreed that Cyprus would assume all responsibility for claims and liabilities "whether or not asserted" relating to its business. Therefore, Amoco had no indemnity obligation. Truck did not dispute Cyprus and Amoco entered into this agreement, and it failed to provide evidence that the 1985 agreement was superseded or altered by any subsequent contract. Truck did not satisfy its burden of proving that Cyprus had a claim against Amoco that Truck can assert as subrogee to Cyprus. Truck's subrogation claim cannot stand. (*Id.* at pp. 1597-1598.)

not an insurance carrier, it is a self-insured entity. Contribution claims are matters solely between insurers. An insurer, to wit, Truck, may not seek contribution from a self-insured entity because "the obligations arising from a policy of insurance do not extend to a self-insurer." (*Metro U.S. Services, Inc. v. City of Los Angeles, supra,* 96 Cal.App.3d at p. 683.) As a matter of law, Truck is not entitled to contribution from Amoco. Truck has not provided any evidence that would have created a triable issue of material fact.

*The Trial Court Complied With Code of Civil Procedure Section 437c, Subdivision (g)*

■ Truck contends the order prepared by Amoco's counsel and signed by the trial court ignores Truck's evidence, in contravention of the requirements in Code of Civil Procedure section 437c, subdivision (g). The contention is without merit.

Code of Civil Procedure section 437c, subdivision (g) states, in relevant part: "Upon the *grant* of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. *The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists.*" (Italics added.) The code provision also provides, in relevant part: "Upon the *denial* of a motion for summary judgment, on the ground that there is a triable issue as to one or more material facts, the court shall, by written or oral *order*, specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy. This determination *shall specifically refer to the evidence proffered in support of and in opposition to* the motion which indicates that a triable controversy exists." (Italics added.)

On June 3, 1993, after taking Amoco's motion and Truck's cross-motion under submission, the trial court issued the following minute orders:

"[Amoco's] [m]otion is granted on grounds set forth in the moving papers, including Amoco's Separate Statement of Undisputed Facts. No triable issues of material fact remain. Among, other things, Amoco was not an insurer of Cyrus [*sic.*]. Counsel for Amoco is ordered to submit to the court, . . . , a proposed order and judgment that are in accordance with CCP§ 437c(g).

"[Truck's cross-motion is] [d]enied in its entirety on grounds set forth in the opposition papers. Amoco is ordered to submit . . . a proposed form of

order that is in compliance with CCP § 437 c(g)." Amoco then prepared a proposed order to which Truck filed objections and a request for clarification. The court signed and filed the order, and Truck filed a motion for reconsideration.

Truck relied on *Tera Pharmaceuticals, Inc.* v. *Superior Court* (1985) 170 Cal.App.3d 530, 531-532 [215 Cal.Rptr. 923], to support its position that when denying a motion for summary judgment the trial court is required to detail conflicting evidence in its order. If the trial court only considered and denied Truck's motion, Truck would be correct. However, in our case, Truck's cross-motion was also its opposition to Amoco's motion, and the trial court concurrently considered the motions for summary judgment. When the court granted Amoco's motion, Truck's cross-motion became moot, and the language of the subsequent order subsumed the denial of Truck's motion. The order complied with the language of Code of Civil Procedure section 437c, subdivision (g) by proffering the evidence in support of the motion. The order was to include evidence in opposition to the motion, *only* if such language was applicable, and it was not.

In *W.F. Hayward Co.* v. *Transamerica Ins. Co.* (1993) 16 Cal.App.4th 1101 [20 Cal.Rptr.2d 468], appellant argued that in granting a summary judgment motion the trial court failed to comply with Code of Civil Procedure section 437c, subdivision (g) which required an order " 'specify the reasons for its determination.' " (16 Cal.App.4th at p. 1110.) "[T]he court's minute order specifically stated, '. . . plaintiff failed to file his claim against the surety within six (6) months of the time the stop action could have been filed, as required by Civil Code 3249.' Also, the judgment of the court stated, 'Plaintiff failed to file suit on its claim against the payment bond of Transamerica Insurance Company within six (6) months, after the time stop notices could have been filed, as required by Civil Code Sections 3249 and 3184.' The minute order also provided that the '[m]otion is granted on grounds set forth in the moving papers, including defendant's separate statement of undisputed facts.' For purposes of meaningful appellate review (a key objective of subdivision (g) of section 437c), the court's statement of reasons is quite adequate. Certainly, there is no question about the reason this motion for summary judgment was granted." (*Id.* at pp. 1010-1111.)

In our case, the trial court specifically stated Amoco was not an insurer of Cyprus and that the motion was granted on grounds in Amoco's moving papers and separate statement. Since the arguments in Truck's opposition and cross-motion were identical, granting Amoco's motion would necessarily mean denying Truck's cross-motion. The court's reasons for granting the

motion were clear. There was neither a need nor a statutory requirement to include opposition evidence. The court's order complied with the code.

## DISPOSITION

The entry of judgment in favor of Amoco is affirmed.[8] Each side to bear its own costs on appeal.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied June 22, 1995, and appellant's petition for review by the Supreme Court was denied September 28, 1995. Lucas, C. J., did not participate therein.

---

[8]Because of our determination Amoco was not Cyprus's insurer, we need not address the statute of limitations issue.