[No. F039621. Fifth Dist. Jan. 7, 2003.]

DENNY'S INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ESTHER
BACHMAN et al., Respondents.

## COUNSEL

Finnegan, Marks & Hampton and Ellen Sims Langille for Petitioner.

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Yohman, Parker, Kern & Nard and Brian L. Duncan for Respondent California Insurance Guarantee Association.

No appearance for Respondent Workers' Compensation Appeals Board.

## OPINION

**WISEMAN, J.**—Denny's Inc. (Denny's) petitions this court by a writ of review challenging the decision of the Workers' Compensation Appeals Board (WCAB) to dismiss the California Insurance Guarantee Association (CIGA) as a party to a workers' compensation claim. Denny's contends CIGA is statutorily required to guarantee a proportionate share of an insolvent insurer's disability obligation when a permissibly self-insured employer is jointly and severally liable for the claim.

Unfortunately, one of Denny's employees suffered a work-related cumulative injury over a one-year period that overlapped two months with the time Denny's elected to insure itself for workers' compensation purposes. The 10-month balance was the responsibility of a private insurance company which became insolvent. Denny's fervently argues that it should only have to pay its 20 percent proportionate share of the disability award and CIGA should pick up the balance.

We agree with the WCAB and find the claim outside CIGA's indemnification responsibility. Essentially, Denny's made the business decision to opt for self-insurance over private insurance and to not purchase an excess workers' compensation policy. To use an annoying proverb, *pro tali numismate tales merces.* ("You get what you pay for.") (Rogers, The Dict. of Clichés (1985) p. 295.)

### BACKGROUND

Esther Bachman (Bachman) claimed a cumulative injury to her wrists while working as a cook for Denny's Restaurant in Bakersfield between May 22, 1996, and May 22, 1997. Denny's admitted the injury was work related and provided Bachman with appropriate medical treatment.

During Bachman's injury period, Denny's insured itself for workers' compensation purposes through July 31, 1996. Thereafter, Denny's obtained private workers' compensation insurance from HIH America.

In May 2001, HIH America was judicially declared insolvent, triggering CIGA's statutory obligation to guarantee HIH America's "covered claims"

under the provisions of article 14.2 of the Insurance Code. (Ins. Code,[1] § 1063 et seq.)

Bachman's disability claim proceeded to trial, and a workers' compensation judge (WCJ) concluded Bachman's wrist injury caused a 38 percent level of permanent disability. The WCJ also found the disability award did not constitute a CIGA "covered claim" because Denny's remained jointly and severally liable. The WCJ dismissed CIGA as a party to the action, thereby absolving CIGA from any liability and leaving Denny's solely responsible for Bachman's workers' compensation award. In November 2001, the WCAB denied Denny's petition for reconsideration and adopted the WCJ's reasoning as its own.

## DISCUSSION

 Denny's contends the WCAB erred by dismissing CIGA as a party to the workers' compensation proceedings and requiring Denny's to pay the full amount of Bachman's disability award. Denny's believes CIGA, as the guarantor of insolvent HIH America, should have assumed HIH America's approximate 80 percent proportionate share of the award.

 Under the California workers' compensation system, a compensable injury may be either "specific" or "cumulative." (Lab. Code, § 3208.1.) A specific injury results from "one incident or exposure which causes disability or need for medical treatment," while a cumulative injury results from "repetitive mental or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment." (*Ibid.*; *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 234 [20 Cal.Rptr.2d 26].)

When an employee suffers a cumulative injury over time, the employee may claim workers' compensation benefits against any one or more of successive employers or insurance carriers that employed or insured the employee during a maximum one-year injury period. (Lab. Code, § 5500.5; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 553-556 [70 Cal.Rptr.2d 295].) The WCAB will hold the multiple employers or insurance carriers in the chain of causation jointly and severally liable for the entire award and allow them to apportion their relative liabilities in separate WCAB proceedings. (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* at pp. 554-556; see also *Flesher v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 322, 327 [152 Cal.Rptr. 459,

---

[1]All further statutory references are to the Insurance Code unless otherwise indicated.

590 P.2d 35]; *Marsh v. Workmen's Comp. App. Bd.* (1968) 257 Cal.App.2d 574, 579 [65 Cal.Rptr. 69].)

 Established in 1969 under the Guarantee Act (art. 14.2 of the Ins. Code), CIGA provides "insolvency insurance" against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. (§§ 119.5, 1063 et seq.; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* 60 Cal.App.4th at p. 556.) Although funded by a compulsory membership of insurance companies doing business in California, CIGA "was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect insurance carriers." (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (1992) 10 Cal.App.4th 988, 994 [12 Cal.Rptr.2d 848]; § 1063, subd. (a).) CIGA's role in guaranteeing workers' compensation claims is therefore limited:

" 'CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections.' [Citation.] 'CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.' [Citation.] 'CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy.' [Citation.] Instead, CIGA's authority and liability in discharging 'its statutorily circumscribed duties' are limited to paying the amount of 'covered claims.' [Citations.] CIGA 'is authorized by statute to pay only "covered claims" of an insolvent insurer, those determined by the Legislature to be in keeping with the goal of providing protection for the insured public. [Citation.]' [Citation.] CIGA has the statutory authority to 'deny a noncovered claim.' [Citation.]

" 'Since "covered claims" are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not " 'stand in the shoes' of the insolvent insurer for all purposes." [Citation.] Indeed, CIGA is "expressly forbidden" to do so except where the claim at issue is a "covered claim." [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a "covered claim." ' [Citation.] 'It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of "covered claim." ' [Citation.]" (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* 60 Cal.App.4th at pp. 556-557.)

Section 1063.1, subdivision (c)(1), in pertinent part, broadly defines "covered claims" as " 'the obligations of an insolvent insurer . . . (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer;

(ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim [timely]; (iv) which were incurred prior to the date coverage under the policy terminated . . . ; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; [and] (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the workers' compensation law of this state . . . .' " (*Baxter Healthcare Corp. v. California Ins. Guarantee Assn.* (2000) 85 Cal.App.4th 306, 310 [102 Cal.Rptr.2d 87].)

■ Section 1063.1, subdivision (c)(3) through (13), continues to define "covered claims" by excluding specific obligations from CIGA's insolvency insurance coverage. Among the exclusions, subdivision (c)(9) provides that " '[c]overed claims' does not include . . . any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured . . . ."

■ "Cases interpreting this language have established that where an insured has overlapping insurance policies and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. In other words, CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available. [Citation.] 'The legislative intent was to create a protection for the public against insolvent insurers *when no secondary insurer is available.*' " (*R.J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405].)

■ "Workers' compensation insurance is a class of insurance covered by the provisions of the CIGA statutes." (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* 60 Cal.App.4th at p. 557, fn. 5, citing § 1063, subd. (a).) Accordingly, CIGA may not guarantee a disability claim when a solvent workers' compensation insurer is otherwise jointly and severally liable for the claim. (*Industrial Indemnity Co.,* at p. 558; see 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed., Tancor edit., 2001) Liability Insurance, § 2.84, p. 2-100.)

Every California employer must secure the payment of workers' compensation benefits by either purchasing third party insurance or obtaining a "certificate of consent to self-insure" from the Director of Industrial Relations. (Lab. Code, § 3700; see 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra,* Liability Insurance, § 2.10[1], p. 2-20.) Under the self-insurance program, the employer must demonstrate the financial ability to pay any compensation that may become due to its employees. (Lab. Code, § 3700, subd. (b); Cal. Code Regs., tit. 8, § 15203.)

The WCAB concluded the self-insurance Denny's provided during the first portion of Bachman's injury period constituted available "other insurance" within the meaning of section 1063.1, subdivision (c)(9), thereby removing Bachman's claim from CIGA's guarantee responsibility. Denny's disputes the WCAB's determination, contending employer self-insurance is not mentioned in the Guarantee Act and therefore is not "other insurance of a class covered by" article 14.2 of the Insurance Code.

We disagree. The Insurance Code divides insurance in California into 22 separate classes, of which workers' compensation constitutes a single class, without distinguishing self-insured and privately insured employers. (§ 100, subd. (9).) Moreover, workers' compensation insurance is defined as "insurance against loss from liability imposed by law upon employers to compensate employees and their dependents for injury sustained by the employees arising out of and in the course of the employment . . . ." (§ 109.) Again, the statutory definition of workers' compensation insurance does not separate self-insured employers from those who are privately insured. (Cf. *In re El Dorado Ins. Co.* (1987) 189 Cal.App.3d 1149, 1153 [234 Cal.Rptr. 734] ["This definition is broad enough to encompass insurance for claims for benefits pursuant to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.) as well as insurance for claims pursuant to the California Workers' Compensation Act (Lab. Code, § 3201 et seq.)."].)

Denny's believes a self-insured employer does not provide "insurance" and is not an "insurer" because section 22 defines "insurance" as "a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Further, section 23 provides that "[t]he person who undertakes to indemnify another by insurance is the insurer, and the person indemnified is the insured." Because of the lack of a contractual relationship to indemnify another, "[a]n entity that self-insures is not an insurer within the meaning of Insurance Code sections 22 and 23." (*Truck Ins. Exchange v. Amoco Corp.* (1995) 35 Cal.App.4th 814, 823 [41 Cal.Rptr.2d 551].)

Contrary to Denny's contention, sections 22 and 23 provide a general insurance framework and do not refer to workers' compensation insurance. Within the workers' compensation laws, the term "insurer" specifically denotes permissibly self-insured employers. Labor Code, section 3211, provides: " 'Insurer' includes the State Compensation Insurance Fund and any private company, corporation, mutual association, reciprocal or interinsurance exchange authorized under the laws of this State to insure employers against liability for compensation *and any employer to whom a certificate of consent to self-insure has been issued.*" (Italics added.)

"A statute dealing expressly with a particular subject controls and takes priority over a general statute. (Code Civ. Proc., § 1859, Civ. Code, § 3534.)" (*Neumarkel v. Allard* (1985) 163 Cal.App.3d 457, 463 [209 Cal.Rptr. 616].) Accordingly, the specific statutory characterization of a workers' compensation insurer supercedes general Insurance Code definitions. Thus, while a self-insured employer may not be an "insurer" when it protects itself against general civil liabilities (*Truck Ins. Exchange v. Amoco Corp., supra,* 35 Cal.App.4th at p. 823), an employer is expressly deemed an "insurer" if issued a certificate to self-insure for workers' compensation. (Lab. Code, § 3211.) It reasonably follows that the workers' compensation liability protection an employer provides itself under the self-insurance program is a class of "insurance."

Denny's argues that our holding in *Gallo Glass Co. v. Superior Court* (1983) 148 Cal.App.3d 485 [196 Cal.Rptr. 23] supports its position that a self-insured employer is not an insurer under the relevant CIGA statutes. In determining whether the exclusive workers' compensation remedy rule under Labor Code sections 3600 and 3601 applied to a self-insured employer, we held that "an employer does not act in the capacity of an insurer when self-insured." (*Gallo Glass Co. v. Superior Court, supra,* 148 Cal.App.3d at p. 489, citing *Williams v. International Paper Co.* (1982) 129 Cal.App.3d 810, 815 [181 Cal.Rptr. 342].) Denny's fails to recognize, however, that our holding was limited to preventing a self-insured employer from escaping liability as an insurer; we immediately added that, under Labor Code section 3211, "[t]he fact that the statutory definition of 'insurer' includes a self-insured employer makes legislation regarding insurers applicable to such employers . . . ." (*Gallo Glass Co. v. Superior Court, supra,* 148 Cal.App.3d at p. 489.)

We agree with our holding in *Gallo Glass Co. v. Superior Court, supra,* 148 Cal.App.3d 485. Legislation regarding workers' compensation insurers applies equally to private third party insurers and self-insured employers. Thus, while the Guarantee Act does not expressly mention employer-provided self-insurance, it references workers' compensation insurance, which statutorily includes employers with permission to self-insure. Accordingly, an employer self-insured for workers' compensation purposes provides "other insurance of a class covered by" the Guarantee Act within the meaning of section 1063.1, subdivision (c)(9).

Our determination comports with the intent of the Guarantee Act. As an insurer of last resort, CIGA assumes responsibility for claims *only* when no secondary insurer is available. (§ 1063.1, subd. (c)(9); *R.J. Reynolds Co. v. California Ins. Guarantee Assn., supra,* 235 Cal.App.3d at

p. 600.) ■ The Legislature did not establish the CIGA to protect Denny's as a self-insurer, but rather, to protect Bachman as a member of the insured public by ensuring she received a full disability award. (See *CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1425 [101 Cal.Rptr.2d 806], citing Barger, *California Insurance Guarantee Association* (1970) 45 State Bar J. 475, 482.)

■ We also find no reason to assess liability against CIGA on equity grounds. As a self-insurer, Denny's placed itself in the position of a private insurer. If Denny's had been covered by a third party insurer instead of being self-insured during the first portion of Bachman's cumulative injury period, that insurer would be liable for the entire disability award. (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd., supra,* 60 Cal.App.4th at pp. 553-556.) Denny's made a risk-management decision to self-insure, gambling that it could lower its costs by not purchasing third party workers' compensation insurance. Denny's cannot reap the benefits of self-insurance without accepting its burdens. Moreover, Denny's could have limited its liability by purchasing "a special excess workers' compensation policy to discharge any or all of the employer's continuing obligations as a self-insurer to pay compensation or to secure the payment of compensation." (Lab. Code, § 3702.8, subd. (c).) By not purchasing a special excess workers' compensation policy, Denny's effectively chose not to insulate itself from the long tail of potential self-insurance liability.

In summary, the WCAB concluded that Denny's and HIH America were jointly and severally liable for Bachman's disability award. Since Bachman could recover the full award from Denny's self-provided "other insurance," the Guarantee Act prevented CIGA from assuming insolvent HIH America's proportionate share. The WCAB therefore properly dismissed CIGA as a party to the workers' compensation proceedings.

### DISPOSITION

The order of the Workers' Compensation Appeals Board is affirmed. Costs are awarded to the California Insurance Guarantee Association.

Ardaiz, P. J., and Harris, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 19, 2003. Baxter, J., did not participate therein. Brown, J., was of the opinion that the petition should be granted.