[No. B214027. Second Dist., Div. Two. Mar. 3, 2010.]

CITY OF LAGUNA BEACH, Plaintiff and Appellant, v. CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant and Respondent.

COUNSEL

Roberson, Kimball & Jaltorossian, Stephen D. Roberson and Blake S. Posner for Plaintiff and Appellant.

Locke Lord Bissell & Liddell, C. Guerry Collins and Conrad V. Sison for Defendant and Respondent.

OPINION

**ASHMANN-GERST, J.**—In this opinion we resolve the following issue: Did the addition of subdivision (c)(13) to Insurance Code section 1063.1[1] abrogate *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433 [129 Cal.Rptr.2d 53] (*Denny's*)? The answer is no. We therefore conclude that the trial court properly invoked the *Denny's* rule when it granted summary judgment and concluded that appellant City of Laguna Beach (City) cannot obtain reimbursement from respondent California Insurance Guarantee Association (CIGA) under section 1063.1, subdivision (c)(13). Though that provision renders the obligation of an insolvent excess workers' compensation insurer a "covered claim" that CIGA must ordinarily reimburse, CIGA need not reimburse a permissibly self-insured employer for benefits paid to an employee for cumulative injury if the employer's liability is based in part on a period of time when the employer was self-insured and chose not to buy excess insurance for the particular risk.

The judgment is affirmed.

## FACTS

*Background*

Continental Casualty Company (Continental) issued a workers' compensation policy to the City providing coverage from May 1, 1998, to May 1, 1999. The policy was excess to the City's $275,000 self-insured retention and covered cumulative injury only if it first manifested during the policy period. Reliance National Indemnity Company (Reliance) issued a workers' compensation policy to the City for the period May 1, 1999, to July 18, 2001. This policy, too, was excess to the City's $275,000 self-insured retention. But it differed from Continental's policy in that it was triggered by cumulative injury if the last date of exposure to the conditions causing the disease occurred during the policy period.

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

A City employee filed a workers' compensation claim for cumulative injury from 1986 to June 18, 1999. The case was resolved in 2001, but the employee reopened the case in 2003 to seek more benefits. The City incurred workers' compensation liability that exceeded its self-insured retention and sought reimbursement from Continental. In addition, because Reliance was insolvent, the City sought reimbursement from CIGA. Continental and CIGA both determined that they did not have to pay the City's claim.

### The City's action

The City sued CIGA and Continental and requested a declaration that they owe the City reimbursement. CIGA filed a motion for summary judgment or summary adjudication. It argued that the City's self-insured status and the Continental policy constituted other insurance under section 1063.1, subdivision (c)(9) and therefore CIGA had no statutory obligation to pay any portion of the benefits that were due under Reliance's policy.

According to the trial court, the City bore the burden of proving the nonexistence of other insurance but failed to meet its burden. The trial court granted CIGA's motion and entered judgment.

This timely appeal followed.

## DISCUSSION

We review summary judgment de novo. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457].) In assessing whether the trial court properly granted summary judgment, the pivotal question presented is whether the City's claim is a covered claim under section 1063.1, subdivision (c)(13) or barred under subdivision (c)(9) because the City's self-insured status qualifies as other insurance. The City contends that section 1063.1, subdivision (c)(13) clearly applies to this case, and that the trial court's reliance on *Denny's* is unexplainable. In particular, the City posits that section 1063.1, subdivision (c)(13) specifically abrogated *Denny's*. What the City fails to appreciate is that the reach of section 1063.1, subdivision (c)(13) is unclear, and we are obligated to harmonize it with *Denny's* to the extent possible. Finally, the City contends that CIGA failed to meet its burden of proof. We disagree.

A. *The applicable interpretive principles.*

■ Before assessing the impact of section 1063.1, subdivision (c)(13) on *Denny's*, it behooves us to acknowledge that "[u]nless expressly provided, statutes should not be interpreted to alter the common law, and should be

construed to avoid conflict with common law rules. [Citation.]" (*Goodman v. Zimmerman* (1994) 25 Cal.App.4th 1667, 1676 [32 Cal.Rptr.2d 419].) As a result, " ' "[a] statute will be construed in light of common law decisions, unless its language ' "clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter . . . ." [Citations.]' [Citation.]" ' [Citation.] Accordingly, '[t]here is a presumption that a statute does not, by implication, repeal the common law. [Citation.] Repeal by implication is recognized only where there is no rational basis for harmonizing two potentially conflicting laws.' [Citation.]" (*California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323].)

■    Moreover, when interpreting a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) "Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Id.* at p. 1387.) If the statute does not have a plain meaning and legislative history is unhelpful, we must " 'apply reason, practicality, and common sense to the language at hand.' [Citation.]" (*U.D. Registry, Inc. v. Municipal Court* (1996) 50 Cal.App.4th 671, 674 [57 Cal.Rptr.2d 788].)

B.    *The common law.*

■    When an employee suffers a cumulative injury, he "may claim workers' compensation benefits against any one or more of successive employers or insurance carriers that employed or insured the employee during a maximum one-year injury period. [Citations.]" (*Denny's, supra,* 104 Cal.App.4th at p. 1437; see Lab. Code, § 5500.5, subd. (a) [setting the one-year period during which employers and insurers are liable].) The employers and insurers are jointly and severally liable for the entire award. They can "apportion their relative liabilities in separate [Workers' Compensation Appeals Board] proceedings. [Citations.]" (104 Cal.App.4th at pp. 1437–1438.)    ■    " '[W]here an insured has overlapping insurance policies and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. In other words, CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available. [Citation.]' " (*Id.* at p. 1439.)

In *Denny's,* an employee claimed that she suffered a cumulative injury and the year-long cumulative injury period spanned May 22, 1996, to May 22,

1997. (*Denny's, supra*, 104 Cal.App.4th at p. 1436.) The employer was self-insured through July 31, 1996. (*Ibid.*) Thereafter, it was covered by a primary workers' compensation policy from a private insurer. When the insurer was declared insolvent, the employer sought reimbursement from CIGA. The court concluded that the self-insured retention was other insurance. The court noted that "[o]ur determination comports with the intent of the Guarantee Act. As an insurer of last resort, CIGA assumes responsibility for claims *only* when no secondary insurer is available. [Citations.] The Legislature did not establish . . . CIGA to protect Denny's as a self-insurer, but rather, to protect [the injured employee] as a member of the insured public by ensuring she received a full disability award. [Citation.]" (*Id.* at pp. 1441–1442.)

The *Denny's* court went on to explain: "We also find no reason to assess liability against CIGA on equity grounds. As a self-insurer, Denny's placed itself in the position of a private insurer. If Denny's had been covered by a third party insurer instead of being self-insured during the first portion of [the employee's] cumulative injury period, that insurer would be liable for the entire disability award. [Citation.] Denny's made a risk-management decision to self-insure, gambling that it could lower its costs by not purchasing third party workers' compensation insurance. Denny's cannot reap the benefits of self-insurance without accepting its burdens. Moreover, Denny's could have limited its liability by purchasing 'a special excess workers' compensation policy to discharge any or all of [its] continuing obligations as a self-insurer to pay compensation or to secure the payment of compensation.' [Citation.] By not purchasing a special excess workers' compensation policy, Denny's effectively chose not to insulate itself from the long tail of potential self-insurance liability." (*Denny's, supra*, 104 Cal.App.4th at p. 1442.)

C. *The statutory scheme.*

CIGA must pay "covered claims." (§ 1063.2, subd. (a).) A covered claim is an obligation of an insolvent insurer. (§ 1063.1, subd. (b).) However, " '[c]overed claims' does not include . . . any claim to the extent it is covered by any other insurance . . . ." (§ 1063.1, subd. (c)(9).) In 2005, section 1063.1, subdivision (c)(13) was added by Assembly Bill No. 817 (2005–2006 Reg. Sess.) to provide that covered claims "include obligations arising under an insurance policy written to indemnify a permissibly self-insured employer . . . for its liability to pay workers' compensation benefits in excess of a specific

or aggregate retention."[2] Subdivision (c)(13) does not cross-reference subdivision (c)(9) or purport to eliminate statutory exceptions to CIGA's liability.

D.  *Interpretation of section 1063.1, subdivision (c)(13).*

Section 1063.1, subdivision (c)(13) does not express an intent to abrogate *Denny's*. If *Denny's* was abrogated, it is only by implication. We do not perceive a direct conflict between the statute and common law. *Denny's* did not hold that CIGA was relieved of its duty to fulfill the obligation of an insolvent excess workers' compensation insurer when an employer was self-insured up to a specific amount. *Denny's* involved a primary insurer.

The question is whether there is an indirect conflict, i.e., whether the policy and reasoning in *Denny's* interfere with section 1063.1, subdivision (c)(13) in a context involving an excess insurer. In broad terms, what *Denny's* held is that CIGA does not have to provide a safety net for an employer to the extent it gambled on self-insuring without private insurance for any portion of the cumulative injury period. Thus, section 1063.1, subdivision (c)(13) and *Denny's* can be harmonized when an employer has excess insurance for the entire year of liability, the excess insurer becomes insolvent, and a claim is then made to CIGA. In that situation, coverage afforded by CIGA would not rescue the employer from a gamble and therefore would not transgress the policy and reasoning set forth in *Denny's*.

But what happens in a scenario like the present case where the employer took a gamble for part of the period of cumulative injury? The policy and reasoning of *Denny's* would cut off CIGA's liability. Can section 1063.1, subdivision (c)(13) and *Denny's* still be harmonized? Yes.

To illustrate, we find it useful to employ a hypothetical. If an employer is alone in insuring six months of an employee's cumulative injury period, the employer has excess coverage over $200,000 for the rest of the period, and the employee obtains an award of $700,000, there are three insurance obligations. There is the employer's obligation to pay the first $200,000 (obligation A), the employer's joint and several obligation to pay $500,000 (obligation B), and the insurer's joint and several obligation to pay $500,000 (obligation X). Obligation A stands alone, but obligation B and obligation X overlap. If the excess insurer becomes insolvent, CIGA can argue based on *Denny's* that obligation X is not a covered claim. Why? While the language of section

---

[2] The City informs us that section 1063.1, subdivision (c)(13) "states that the City's self[-]insured status does not constitute 'other insurance' under Insurance Code [section 1063.1, subdivision (c)(9)]." Section 1063.1, subdivision (c)(13) does not contain the language the City represents.

1063.1, subdivision (c)(13) would otherwise make obligation X a covered claim, obligation B represents overlapping other insurance for the exact same liability. As well, obligation B is not the obligation of an insolvent insurer, so obligation B could never qualify as a covered claim under section 1063.1, subdivision (b). Section 1063.1, subdivision (c)(9) is triggered and takes obligation X out of the realm of covered claims because CIGA is only supposed to be an insurer of last resort. *Denny's* does not conflict with section 1063.1, subdivision (c)(13). Rather, *Denny's* merely enforces the exception to covered claims in section 1063.1, subdivision (c)(9).

The City bases its contrary interpretation on the legislative history. But the legislative history is not the panacea the City hopes for.

The final senate floor analysis for Assembly Bill No. 817 (2005–2006 Reg. Sess.) creates confusion rather than clarity. It states: "According to the author's office, the purpose of the bill is to clearly require CIGA to pay claims resulting from insolvent insurers who sold special excess policies to public and private self-insured employers . . . . [¶] An Appeals Court decision in the matter of [*Denny's*] ruled that workers' compensation self insured employers were some type of 'other insurance' and therefore CIGA did not guarantee the insolvent carrier that issued a specific excess policy. The decision has created additional litigation between CIGA and the entire self insured community to overturn the decision. According to the author, [Assembly Bill No. 817] is a legislative compromise that puts into statute the agreement to the key issues worked out by the affected parties themselves. [¶] This bill was substantially amended in the Senate because the parties had not agreed to language prior to the bill's passage in the Assembly. The amendments were worked out in cooperation with representatives of employers (both private and public), CIGA, the Self-Insurers' Security Fund, and Bipartisan committee staff of both the Assembly and Senate." (Assem. Floor Analysis, Conc. in Sen. Amends. to Assem. Bill No. 817 (2005–2006 Reg. Sess.) as amended Sept. 2, 2005, p. 2.)

This analysis suggests that the Legislature did not appreciate that, as the City concedes, *Denny's* involved a primary insurer rather than an excess insurer. And while the analysis refers to litigation to overturn *Denny's*, it also refers to a compromise by various parties. What was the compromise? Moreover, the analysis does not suggest that the bill was designed to remove permissibly self-insured employers from the definition of other insurance.

A senate committee analysis stated that the purpose of the bill was "to reverse a court ruling involving Denny's restaurants in which CIGA was relieved of the obligation to pay workers' compensation claims arising under a policy of specific and aggregate excess coverage due to the presence of 'other insurance.' " (Sen. Com. on Banking, Finance & Insurance, Analysis of

Assem. Bill No. 817 (2005–2006 Reg. Sess.) June 29, 2005, p. C.) This analysis, however, predates the final senate floor analysis, and once again fails to appreciate that *Denny's* did not involve excess insurance. More importantly, the language of section 1063.1, subdivision (c)(13) does not purport to repeal *Denny's* and, as we have shown, it can be harmonized with *Denny's*.

Because the legislative history does not help us interpret section 1063.1, subdivision (c)(13), we are left with the rules we have already applied: the statute must be harmonized with common law, and we must apply practicality and common sense. We have done so. As a matter of policy, we find no reason to saddle CIGA with a liability that exonerates an employer's decision to lower its costs and gamble on not being insured for a portion of the cumulative injury period.

E. *Application of* Denny's *to the City's claim.*

The undisputed facts in CIGA's separate statement established that it was entitled to summary judgment. We therefore reject the City's contention that CIGA did not meet its burden of proof.[3]

The City's employee stopped working on June 18, 1999, and filed a claim for cumulative injuries. The City admits it was solely responsible for the first $275,000, and the entities that provided excess insurance from June 18, 1998, to June 18, 1999, were jointly and severally liable for an excess award. Because it did not have excess insurance, the City was the de facto insurer for awards that went over $275,000 and were based on liability that attached from June 18, 1998, to May 1, 1999. Reliance provided excess insurance over $275,000 for liability that attached from May 1, 1999, to June 18, 1999. We assume for purposes of this appeal only that the Continental policy was not triggered.[4] Thus, the employee was entitled to a joint and several award against the City and Reliance for the award to the extent it exceeded $275,000. The picture is this: From June 18, 1998, to May 1, 1999, the City chose not to purchase excess insurance that would cover cumulative injuries. In other words, the City took a gamble that it would not be liable for more than $275,000 for a cumulative injury. Under the policy enunciated in *Denny's*, CIGA need not pay.

---

[3] The City argues that it was improperly saddled with the burden of proving the nonexistence of other insurance. We agree that the initial burden of proof rested on CIGA, not the City. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77] ["The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case . . .' "].) This does not mean, however, that CIGA's moving papers were deficient and that summary judgment must be reversed.

[4] According to the City, Continental claims that the employee's injury was not an occurrence under its policy.

The parties devote much of their briefs to discussing whether CIGA met its burden of proof with respect to whether the Continental policy was other insurance. But if Continental covered the cumulative injury, CIGA is not liable because Continental's policy is other insurance. And if Continental did not cover the cumulative injury, CIGA is not liable because the City's self-insured status is other insurance for the portion of the cumulative injury period before Reliance was on the risk. Thus, whether Continental provided coverage is moot.

## DISPOSITION

The judgment is affirmed.

CIGA shall recover its costs on appeal.

Doi Todd, Acting P. J., and Chavez, J., concurred.